IN RE APPRAISEMENT OF OMAHA GAS PLANT.
NELSON B. UPDIKE, PETITIONER, v. CITY OF OMAHA
ET AL., RESPONDENTS.

FILED NOVEMBER 30, 1918.   No. 20757.

1. **Constitutional Law**: EMINENT DOMAIN: JUDICIAL FUNCTIONS. The ascertainment by appraisers, or commissioners, of the amount of damages to be awarded to one whose property has been taken, or damaged, for public use, in the exercise of eminent domain, is a function judicial in its nature. It is only a preliminary step in the ascertainment of damages, unless the parties interested agree to accept the award.

2. ———: JUDICIAL AND EXECUTIVE DEPARTMENTS. Under article II of the Constitution, providing for the separation of the executive, legislative and judicial departments of the government, the legislature has no power to compel the exercise of purely executive duties by the courts.

3. ———: COURTS: LEGISLATIVE POWER. The board of appraisers created by sections 4a-4f, ch. 87, Laws 1917, though termed a "court of condemnation," does not constitute a court under the Constitution and laws of this state, although such board exercises functions judicial in their nature. The appointment of the members of such a "court of condemnation" by this court, or the chief justice thereof, under the statute referred to, pertains to a judicial proceeding and is within the power of the legislature to provide for.

4. **Eminent Domain**: APPRAISERS. The legislature may designate a class from which such appraisers may be chosen.

5. **Statutes**: AMENDMENT. Chapter 87, Laws 1917, so far as it provides for the appropriation of gas works for public uses, is sup-

plemental to chapter 46 (secs. 4067-4403), Rev. St. 1913, relating to municipal corporations, and is not invalid as a violation of the Constitution relating to the manner in which statutes may bc amended.

Original application to vacate order directing appraisement by court of condemnation of the Omaha gas plant. *Petition denied.*

*Noland & Woodland,* for petitioner.

*W. C. Lambert, W. D. McHugh* and *W. H. Herdman,* for respondents.

The legislature of 1917 passed an act supplemental to chapter 46 of the Revised Statutes, relating to municipal corporations of the metropolitan class, and amending and repealing certain specified sections of that acts as amended in 1915. Laws 1917, ch. 87. After conferring upon such city additional powers to those theretofore granted, sections 4a to 4f, inclusive, provide a means for the condemnation and appropriation of certain public utilities. These sections provide that, after the voters of the city have at an election voted in favor of acquiring any "water-works, water-works system, gas plant, electric light plant, or electric light and power plant, or street railway," the city shall, by the power of eminent domain, have the right to acquire any such works, plant or system; that the result of the election shall be certified immediately to the supreme court, and that court, or the chief justice thereof, if the court is not in session, shall within 30 days appoint three district judges, one of whom shall be from the district in which the city is located, and said judges "shall constitute a court of condemnation for the ascertainment and finding of the value of any such plant, works, or system."

The supreme court is directed to make an order requiring the judges to attend as a court of condemnation at the county seat, at the time stated in the order.

Power is conferred upon that body to fix a time for hearing, to give notice thereof to all parties interested, to summon and swear witnesses, and to require the production of books and papers deemed necessary for the ascertainment of the value. It may appoint a reporter to report and preserve all evidence introduced before it. It is then provided: "Such court shall have all the powers and perform all the duties of commissioners in the condemnation and ascertainment of the value and in the making of an award of all property of any such works, plant or system."

It is also provided that the city shall have the right, after the finding of the value, to elect to abandon such condemnation proceedings, and, if it does not so elect, the owners of the property may appeal from the award to the district court, where the mater shall be heard upon the evidence taken before the commissioners.

The result of an election held upon a proposition for the purchase of the Omaha gas plant by the city of Omaha, showing that the proposition carried by a large majority, was duly certified to the chief justice, and three judges of the district court were appointed under the provisions of the statute. A petition to vacate the order was afterwards filed by Nelson B. Updike, a resident and taxpayer of the city of Omaha, and a hearing had thereupon. This petition sets forth that the statute is unconstitutional; that this court has no jurisdiction to make the order, and the judges appointed are without power to act, and, if allowed to proceed, their acts will be null and void; that the attempt to create a court is in violation of section 1, art. VI of the Constitution, limiting the power of the legislature to create courts other than those named therein; that, if the "court of condemnation" is not a court within the meaning of the Constitution, then under article II of the Constitution the supreme court is without power, and is "expressly forbidden to

exercise any power properly belonging to the legislative or executive departments of the state governments;" that the sections providing for the appropriation of gas plants and other public utilities are an amendment to sections 4329, and 4330, Rev. St. 1913; that the amending act does not contain or refer to said sections, and does not repeal them, and is therefore in violation of section 2, art. III of the Constitution; that the title to the act is defective because none of the sections enumerated therein pertain to the subject-matter of the act, and the words "supplemental to" in the title are a violation of the constitutional requirement that the subject of an act be clearly expressed in its title, and that no bill shall contain more than one subject; that the subject-matter of the amending act is different from the matters contained in the sections named in the title as being amended, and is not germane thereto; that the bill was never legally passed because, after being amended in a conference committee, no action was taken by the senate on the report of the committee, and the bill was not signed by the presiding officer of the senate while that body was in session and capable of transacting business.

The decision of the question so raised is now to be made.

LETTON, J.

The first questions raised are: Whether the so-called court of condemnation is a court, the creation of which is prohibited by the Constitution; and whether, if not a court, the members of the body may be appointed by this court, or by the chief justice.

The power to exercise the right of eminent domain must be exercised by, or conferred by, the legislature, and when it is granted to a municipal corporation, or to a public service corporation, that body must determine how far it will make use of the power thus conferred. This is an executive or administrative act.

When it comes to the stage of compensating the owner of the property by ascertaining the value of the property taken, or damaged, this requires the exercise of judicial functions. The preliminary steps in such proceedings are not always in the form of court proceedings. They are more often taken with less formality, but nevertheless with essential prerequisites prescribed in order to secure justice and impartiality in the finding. A record is required to be made in such form as to show definitely the amount of the award, and, if either party does not accept the award, to furnish the basis for an appeal to a regularly constituted court where rights may be determined by a jury.

These preliminary steps are a part of the procedure, and, while they may go no further than the making and acceptance of the award, they are judicial, and not legislative or executive, in character. It is pointed out in *State v. Neble*, 82 Neb. 267: "Many executive or administrative acts performed by judicial officers, and many judicial acts performed by ministerial officers, are and must be held valid. * * * The appointment of an officer might properly, we think, be classed as the exercise of an executive or administrative function, at least not judicial. Yet courts and judges frequently find it necessary to make such appointments in order that the judicial functions of the courts may be freely exercised. It often happens that the courts or judges are clothed with this appointing power where the appointee may not be required to discharge any duty which could be in any way ancillary to the exercise of the judicial functions of the court or judge making the appointment, and yet the validity of the appointment could not be successfully questioned, for the reason that the person appointed would exercise judicial functions in the discharge of the duties imposed under the appointment."

While the proceedings are judicial in their nature, it is unnecessary that they be conducted in their inception by a court, and in fact in every instance in which condemnation proceedings are carried on in this state, so far as to the writer known, they are not conducted in or by any regular judicial tribunal. While the appraisers required to be appointed by the statute under consideration are called a court of condemnation, the fact that this term is used is immaterial. Such bodies have been variously termed boards of assessment, of commissioners, of appraisers; but, whatever the nomenclature, they exercise practically the same functions, sometimes with, and sometimes without, the assistance of officers of regularly constituted courts.

The board thus constituted cannot be a "court" under the Constitution of the state, since the legislature has no power to constitute courts other than those named in that instrument, except "courts inferior to the district courts" for cities and incorporated towns, and we are convinced that it was not its intention to exceed its authority in this respect. The objections made would apply to the appointment of appraisers in condemnation proceedings by the county judge. Such proceedings are not in the county court. *Mattheis v. Fremont, E. & M. V. R. Co.*, 53 Neb. 681; *Brown v. Chicago, R. I. & P. R. Co.*, 64 Neb. 62.

We find no difficulty in holding, therefore, that no new court was created by the act in violation of article VI of the Constitution, and that the vesting of the power in this court, or in the chief justice, to appoint the members of the board of appraisers does not violate the constitutional requirements (article II) that the executive, legislative and judicial departments of the government be kept separate, "and no person or collection of persons being one of those departments, shall exercise any powers properly belonging to either of the others, except as hereafter expressly directed or permitted."

Another question raised is whether it is within the power of the legislature to impose the duties of making such appraisement upon district judges in the state. As we have seen, the act of appraising the value of property involves the exercise of judicial functions—facts must be collated and compared in the mind of the appraiser, a standard of value must be reached, and the property measured by that standard. It is competent for the legislature to select a class from which appraisers may be chosen, and men of judicial training and experience are no doubt well qualified for such duties. It is not absolutely clear that the law constitutes a violation of the Constitution in this respect. The benefit of the doubt in such cases must always be given to the legislature, and it is our duty to uphold the law, unless it is clearly void.

In this connection, we deem it advisable to point out that there is an increasing tendency, in this and other states, to call upon courts, or judges, to perform duties outside of their proper functions. This is a tendency which should be repressed rather than encouraged. The duties properly belonging to judicial tribunals are usually sufficiently onerous, and the work of the judges sufficiently arduous, to require their best efforts and occupy their full time, and they should not be subjected to the performance of other duties.

It is also argued that the sections of the act named constitute an amendment to sections 4329 and 4330, Rev. St. 1913. We think this contention is not well founded. These sections provide that the mayor and council may appropriate private property "for the use of the city for * * * gas works," but do not provide for the appropriation and taking over of existing gas works. We are convinced that the power formerly granted was only to appropriate real estate upon which the city might establish gas works, and that the present act is not subject to the objection

made upon this score. The act, furthermore, in this respect is clearly supplemental and germane to the general charter, since it supplies a method of appropriating gas works not theretofore provided for.

It is alleged that, after the act had been passed by the house, it was amended in the senate; that the bill went to a conference committee; that the house adopted the report of the conference committee; but there is no record of any action taken by the senate upon the committee's report. It is contended that the act was void because the legislative journals did not show that the senate concurred in the report of the conference committee. The bill is signed by the president of the senate, the speaker of the house, and the governor.

In *State v. Dean*, 84 Neb. 344, it was held that the enrollment, authentication, and approval of an act of the legislature are *prima facie* evidence of its due enactment; that the silence of the journals is not conclusive evidence of the nonexistence of a fact which ought to be recorded therein regarding the enactment of the law; and that the act attacked in that case was not invalidated because of the silence of the senate journals as to concurrence in the formal amendment by the house. These principles determine this contention adversely to the petitioner.

We conclude that the portion of the act assailed, in so far as it affects the matter under consideration, is valid. The petition to set aside the former order is

DENIED.

ROSE, J., dissents.

CORNISH and ALDRICH, JJ., not sitting.