STATE, EX REL. THURSTON J. LONG, APPELLEE, V. CITY OF NEBRASKA CITY ET AL., APPELLANTS.

FILED JULY 22, 1932. No. 28192.

*Thomas E. Dunbar*, for appellants.

*D. W. Livingston, Edwin Moran* and *Andrew P. Moran*, contra.

Heard before GOSS, C. J., ROSE, DEAN, EBERLY, DAY and PAINE, JJ., and RYAN, District Judge.

GOSS, C. J.

This is an appeal from a judgment allowing a peremptory writ of mandamus commanding respondents to include in the annual estimate for 1931, certified to the county clerk, an item of $1,800 for the annual salary of a visiting or community nurse.

The action was begun on August 8, 1931. On August 29, 1931, after a full hearing upon the merits, the district court granted a peremptory writ ordering the city officials to convene and certify the item to the county clerk within 30 days. The respondents were denied supersedeas but appealed to this court. However, on September 26, 1931, they obeyed the unsuperseded order, made an amended estimate, including this levy for the visiting nurse fund and delivered it to the county clerk. That official refused to place the levy on the tax books of the county. Nothing further was done until October 24, 1931, when the same relator brought mandamus to compel the county clerk to act. Upon trial to the court a peremptory writ was granted on October 30, 1931, directing the county clerk forthwith to enter the special levy. On appeal we reversed the judgment particularly because the additional item had been certified to the county clerk after he had completed the tax list duly levied by the county board of equalization and had delivered it to the county treasurer. We further called attention to the delay in seeking mandamus against the county clerk and to the disorder and confusion likely to result not so much from changes in the books of the treasurer as from rights and liabilities arising out of 1931 taxes already paid and receipts in full already issued by the treasurer. *State v. Barstler,* 122 Neb. 167. Notwithstanding their aforesaid compliance on September 26, 1931, with the writ in the instant cause, the respondents continue their defense here.

Section 71-2407, Comp. St. 1929, is as follows: "Whenever petitions signed by twenty-five per cent. of the electors of a city, county, or village shall be presented to the city council, board of supervisors or commissioners or trustees praying for the submission of the question of making a levy to provide for salary and expenses of said nurse, and stating the amount of the levy and the period of years in which the same shall be made, it shall be the duty of said council, board of supervisors or commissioners or village board to submit the question to a vote of the

people at a regular, or special election called for that purpose. If the question is submitted at a special election, three weeks' notice of said special election shall be given by publication in some newspaper of general circulation which said notice shall be published three consecutive weeks, if the election is in a city or village; or if in a village and no paper is published therein, then said notice shall be posted in three of the most public places in said village. If a majority of the votes cast at such election on said question be in favor of said levy, then the regularly constituted authorities of said city, county or village shall include the same in the estimate for expenses for each year during the period for which adopted unless the same shall be revoked and the tax shall be levied and collected in the same manner as other taxes are levied and collected."

A proper number of qualified electors presented their petitions for the submission of the question. The respondents recognized their duty and proceeded to do it. General city elections are provided by statute to be held on the first Tuesday in April. Comp. St. 1929, sec. 16-301. Respondents decided to submit the question at the imminent general election, which was done. Respondents assert that as a city election it was nugatory because there was no resolution of the city council or proclamation by the mayor relating to the submission. On October 21, 1931, the mayor and city commission duly passed a carefully detailed ordinance, consisting of eight sections, expressly providing for this election to be held on November 4, 1931, and for the ballots, devised so as to express the proposition submitted to the voters, to be printed and transmitted by the city clerk to the county clerk for distribution to the city polling places. The fifth section provided that the duly appointed and qualified judges of the general election should officiate as to the balloting on this proposition submitted to the electors of the city. The seventh section set forth a fully described notice of the election to be published in Nebraska Daily News-Press and to be posted in each of the described voting precincts in

the city. We think the ordinance which was passed by the city council, approved by the mayor and attested by the city clerk, was as sufficient in form as any resolution or proclamation.

Respondents seem to regard the election of November 4, 1931, as far as it affects the municipal question voted upon, as a special city election. They argue that, as it was impossible to give the three weeks' notice required by statute in the case of a special election, the election was therefore nugatory. The evidence shows that the notice was published only ten days. But the statute, above quoted, provides that the question may be submitted either at a "regular, or special election called for that purpose." Two questions suggest themselves: (1) Was the general election in 1931 a competent time to hold this election for this municipal purpose? (2) May the word "regular" be interpreted as having the same meaning as "general?"

The city charter of Lincoln provided that a proposition to authorize the issuance of utility bonds may be submitted either at "a general election," in which a majority vote would carry them, or at "a special election called for that purpose," in which a 60 per cent. vote was required to carry them. This court held: "A state-wide primary election is a 'general election' at which a majority vote is sufficient to carry a proposition to authorize the issuance of municipal bonds, within the meaning of the 'Home Rule Charter' of the city of Lincoln, though the general city election is held on a different date and 60 per cent. of the vote on such a proposition is necessary to carry it at a special election." *State v. Marsh*, 107 Neb. 607. Also a state-wide primary was held to be a "general election" within the meaning of that term as used in the Lincoln charter in the grant of power to issue municipal bonds upon a majority vote. *State v. Johnson*, 117 Neb. 301.

The adjective "regular" is defined by Webster's New International Dictionary, 1931, as "Governed by rule or rules; steady or uniform in course, practice, or occurrence; * * * returning or recurring at stated or fixed times

or uniform intervals." The times for state-wide and city general elections are so fixed and defined by statute that they meet the calls of the above definition of "regular." The legislature, in the use of the words "regular election," did not use either the word "city" or the word "state." The legislature must be deemed to have used the terms employed as defined above and as generally understood by intelligent persons. Such would either understand them or would seek a definition in or by an accepted authority. An election, to be a regular one, is such as is commonly known as a general election. On general reasoning and under the authority of the cases we have cited we are of the opinion that the general election in November was a competent time to hold the election and that the word "regular" in the statute has the same meaning as "general" when considered in the environment of this particular cause. Public policy, on economic grounds, looks with favor upon the submission of such questions at general elections rather than at special elections set for the particular purpose.

Another important question to be determined is that of notice to the electors. This municipal matter being submitted to a vote at a general election, the legislature did not provide any definite time for notice as it does in case of submission at a special election. The evidence shows that the notice was published ten days; that a total of 1733 electors residing in the city voted at the election but, as the canvass by the respondent officials showed, only 1638 of them voted for or against the proposition here involved. Assuming that all of the 1733 city electors received ballots on the proposition when they presented themselves to vote, it is evident that 95 of them failed to vote on the particular proposition. The canvass by the officials and the evidence fail to show other than the votes for and against the proposition. From this and from the large percentage of those who attended the general election and who voted on the city proposition, it is inferable that the voters generally had actual notice of this sub-

mitted question. The circulation of the petitions, the unusual nature of the question and the sharp division in the vote seem to indicate that the published notice was augmented by actual notice through publication by word of mouth throughout the community.

Where a vacancy occurred in the office of county commissioner more than thirty days before a general election, it is to be filled thereat; a failure of the county clerk to advertise it in election notices will not invalidate the votes cast to fill the vacancy, where the fact is generally known and acted on by the voters. *State v. Skirving,* 19 Neb. 497. See, also, *State v. Thayer,* 31 Neb. 82; *State v. Van Camp,* 36 Neb. 91; and *State v. Lansing,* 46 Neb. 514, wherein Irving, C. reviewed many cases. His opinion, adopted by the court, held that, in filling a vacancy in public office, the "election for that office is not invalid because the filling thereof was not included in the public notice of election, at least where it appears that the electors generally were appraised of the fact and voted on the question." The principle is stated in McCrary on Elections (4th ed.) sec. 177: "We have no doubt that where an election is held in other respects as provided by law, and *notice in fact* is brought home to the great body of the electors, though derived through means other than the proclamation which the law prescribes, such election will be valid." The principle running through the above citations is applicable here.

Respondents called one witness and tried to prove by him that he never knew of "any election held within the city of Nebraska City on the 4th of November, 1930." They did not show that he was an elector. The court properly sustained an objection to the testimony.

The result of the election as canvassed and declared by the respondents was never directly contested. It does not appear to have been questioned by other electors. While the majority was small it was still a majority. The duty of the respondent officials to certify the levy has never been revoked. That duty was imposed by law, was clear

and still existed at the time the writ was applied for and at the time the judgment of the district court was entered. The judgment is

AFFIRMED.