## CENTRAL POWER CO. et al. v. NEBRASKA CITY et al.

No. 11601.

Circuit Court of Appeals, Eighth Circuit.

June 1, 1940.

Rehearing Denied July 2, 1940.

William H. Pitzer and Lloyd E. Peterson, both of Nebraska City, Neb. (Marshall Pitzer, of Nebraska City, Neb., on the brief), for appellants.

Varro E. Tyler, of Nebraska City, Neb., and Arthur R. Wells, of Omaha, Neb. (John M. Dierks, of Nebraska City, Neb., on the brief), for appellees.

Before GARDNER, SANBORN, and WOODROUGH, Circuit Judges.

WOODROUGH, Circuit Judge.

The Central Power Company, a Delaware corporation which owns and operates gas, water and electricity utilities in and about Nebraska City, Nebraska, and the Continental National Bank and Trust Company of Chicago and Harold R. Smith, who are citizens and residents of Illinois and the trustees for bondholders under a deed of trust of the Power Company's property, appeal from a judgment dismissing their action and dissolving and refusing to make permanent a preliminary injunction entered against the City Commissioners of Nebraska City and the members of a duly appointed Court of Condemnation. Alleging that the parties were of diverse citizenship and that the amount in controversy exceeded $3,000 exclusive of interest and costs, the Power Company and the trustees prayed that the defendant City Commission and Court be restrained from proceeding to condemn, and acquire under eminent domain certain properties of the Power Company in and about the City of Nebraska City. Plaintiffs stated that the condemnation was unauthorized and illegal and threatened them with irreparable injury for which they had no adequate remedy at law. They prayed for a preliminary injunction, which was granted on the verified bill, the defendants, having failed to appear on the day set for

hearing. Subsequently defendants appeared and plead to the merits, alleging also that petitioners' remedy at law was adequate. The trial court decided the case upon the merits but without making any declaration as to whether a remedy existed or was adequate.[1]

The Central Power Company owns, subject to the mortgage interest of the trustees, utilities property which is centered in the City of Nebraska City, but extends therefrom into adjacent rural districts and nearby incorporated cities and villages. The utilities properties, which are operated as a unit, furnish gas, water and electricity service to the inhabitants of the city and also to interurban customers, the greater number of whom receive the service within a radius of ten miles of the city. The Commissioners of Nebraska City, who constitute its governing body, determined in the course of their official

---

[1] A Court of Condemnation under Nebraska eminent domain laws consists of Nebraska District Judges appointed by the Supreme Court of Nebraska, but the court is not a judicial court. City of Mitchell v. Western Public Service Co., 124 Neb. 248, 246 N.W. 484. The statutory provisions governing procedure in the Court of Condemnation, and in the appeals therefrom, do not include provisions for consideration of questions other than questions of valuation. Sections 19-704, 19-705, Comp.St.1929 Neb. In some cases a person interested in property proceeded against for condemnation has been allowed to defend against the condemnation on the ground that it was unauthorized, and raise this defense in legal proceedings. The Supreme Court of Nebraska has permitted intervention in the proceeding in which it appoints the Court of Condemnation judges. City of Mitchell v. Western Public Service Co., supra; Updike v. City of Omaha, 102 Neb. 782, 169 N.W. 725. But the Supreme Court of Nebraska has not declared that such intervention is a matter of right rather than merely permissive in its discretion. Nor are we cited to any cases or statutory provisions which establish that a person whose property is sought to be taken by proceedings before the Court of Condemnation may appeal to the District Court of Nebraska and there question as a matter of right the validity and authority of the condemnation and the right under which it is prosecuted. See Grantham v. City of Chadron, 8 Cir., 20 F.2d 40. Although legal remedy has been permitted on intervention and on appeal, no statute or case which is before us clearly demonstrates that the remedy, if questioned, could be maintained without regard to the discretion of the court wherein the defense was raised. Issues which lurk in a record are not precedents. KVOS, Inc., v. Associated Press, 299 U.S. 269, 279, 57 S.Ct. 197, 81 L.Ed. 183; Webster v. Fall. 266 U.S. 507, loc. cit. 511, 45 S.Ct. 148, 69 L.Ed. 411. The Supreme Court of Nebraska has allowed the equitable remedy of injunction in cases where the right to condemn was challenged and proved invalid. Horner v. Eells, 114 Neb. 210, 206 N.W. 733; Wilber v. Reed, 84 Neb. 767, 122 N.W. 53; Chicago, R. I. & P. R. Co. v. Railroad Commission, 88 Neb. 239, 129 N.W. 439; Goergen v. Department of Public Works, 123 Neb. 648, 243 N.W. 886. Although we appreciate the desirability of trying cases of the character of the present in the original action in the state court, when that is possible (see Atlas Insurance Company v. Southern, Inc., 306 U.S. 563, 570, 571, 59 S.Ct. 657, 83 L.Ed. 987; Petroleum Exploration, Inc., v. Public Service Commission, 304 U.S. 209, 58 S.Ct. 834, 82 L.Ed. 1294; Cavanaugh v. Looney, 248 U.S. 453, 39 S.Ct. 142, 63 L.Ed. 354; Natural Gas Company v. Slattery, 302 U.S. 300, 310, 58 S.Ct. 199, 82 L.Ed. 276), the facts stated in the Power Company and trustees' petition established a case of federal jurisdiction of a type suitable to the equitable remedy of injunction, and the existence of an adequate remedy at law did not so plainly and clearly appear that the trial court should of its own motion have raised objection to the maintenance of the action. See American Life Ins. Co. v. Stewart, 300 U.S. 203, 57 S.Ct. 377, 81 L.Ed. 605, 111 A.L.R. 1268; Louisville & N. R. Co. v. Western Union, 250 U.S. 363, 39 S.Ct. 513, 63 L.Ed. 1032; Colorado E. R. Co. v. Chicago, B. & Q. R. Co., 8 Cir., 141 F. 898. When defendants did not appear to contest the plaintiffs' prayer for a preliminary injunction they waived any objection to such relief to the extent that the objection was based on the contention that there was an adequate remedy at law. See American Life Ins. Co. v. Stewart, 300 U.S. 203, 57 S.Ct. 377, 81 L.Ed. 605, 111 A.L.R. 1268, and cases there cited. The trial court hence had jurisdiction to grant the equitable remedy of preliminary injunction, and upon hearing the question of whether the injunction should be dissolved, he could properly decide on the merits whether the injunction should be dissolved for lack of equity.

duties that the interests of the city and its inhabitants would be furthered if the city undertook to own and operate the utilities. The eminent domain powers conferred upon the City by statutes of the State of Nebraska were sufficiently broad to permit the acquisition through condemnation of the greater part of the properties, and the Commissioners decided that the City should proceed to condemn all of the Company's property which it could legally own and operate, excluding such property of the Company as was situated within the boundaries of other incorporated cities and villages. For the purpose of ascertaining whether the judgment and desires of the qualified voters of the city coincided with their own, and also to obtain requisite authority to proceed, the Commissioners passed an ordinance providing for an election and vote on the question. The ordinance, No. 743, ordained as follows:

"Section 1. The Mayor and Council of the City of Nebraska City, Nebraska, hereby find and determine: That Central Power Company, a corporation, owns and operates a waterworks, waterworks system, gas plant, and electric light and power plant, a distribution system and transmission lines which are public utilities and are located and operated partly within and partly without the corporate limits of the City of Nebraska City and serve the City and the inhabitants thereof and the main part of which works, plants and system are within said City; said corporation also owns transmission lines and distribution lines and systems outside the corporate limits, but which are connected with its electric plant in said City, by which it furnishes electric current and power to consumers outside the City.

"Section 2. At the general primary election to be held on Tuesday, the 9th day of August, 1938, there shall be submitted to the qualified electors of the City of Nebraska City the following question:

" 'Shall the City of Nebraska City, in Otoe County, Nebraska, acquire and appropriate for public use by an exercise of the power of eminent domain the public utility properties of Central Power Company, a corporation, the main part of which is within said City, consisting of the waterworks, waterworks system and plant, gas plant, and distribution system and the transmission lines located and operated partly within and partly without the said City, and which serve said City and its inhabitants, including the following described real estate in said City: (herein a description of the property by lot and block); and including also all real, personal and mixed property of all kinds and description owned by said corporation which constitutes a part of or are appurtenant to or are used in connection with said public utility properties in serving said City and its inhabitants, whether such properties be located within or without the corporate limits of said City; and including also the electric transmission and distribution lines of said Central Power Company which lie outside the corporate limits of said City which receive current from the plant in said City and which serve only private consumers outside of other incorporated cities or villages (but not including any transmission lines or distribution systems serving other incorporated cities or villages or the inhabitants thereof) ?'·

"Section 3. Notice of the submission of said question shall be given to the qualified electors of the City by publication in The Nebraska Daily News-Press, a legal newspaper published and of general circulation in said City, at least twenty days before said election. The published notice shall set out said proposition at length.

"Section 4. The Clerk shall cause ballots to be printed which shall contain said proposition at length, followed by the words, 'Yes' and 'No' each of which shall be preceded by a square and electors of the City voting in favor of the adoption of said proposition shall mark an 'X' in the square preceding the word 'Yes' and the electors voting against said proposition shall mark an 'X' in the square preceding the word 'No.' The Clerk shall cause said printed ballots to be delivered to the Election Boards in the several Precincts. The Clerk shall also procure and cause to be furnished to the Election Boards poll books and tally lists in which the names of the electors voting on said question shall be recorded and the votes shall be tallied when counted by the said Election Boards and such poll books and tally lists shall be returned to the City Clerk. The Clerk shall also make provision whereby sick and absent voters may vote as provided by law. The Clerk shall retain custody of and preserve the poll books, tally lists and ballots until otherwise ordered by the Council.

"Section 5. Electors shall vote in the Precincts in which they severally reside, and the polling places shall be those at which the primary election is held. The polls shall be kept open from eight o'clock A. M. until eight o'clock P. M. of said date. Said election shall be conducted and the vote taken and counted and the return thereof made by the Election Boards which conduct the primary election. The returns of the vote on said question shall be made to and filed with the City Clerk and the ballots cast on said question, after being counted by the Election Board, shall be returned to the City Clerk. The votes on said question shall be counted and canvassed and the result found and declared as in other City elections.

"Section 6. If the acquisition and appropriation of said public utilities and property by an exercise of the power of eminent domain by the City be authorized by the vote of the qualified electors of said City at said election, then said City and the Mayor and Council thereof, shall take and cause to be taken such further action as may be proper and required by law to acquire and appropriate said public utilities and property by an exercise of the power of eminent domain.

"Section 7. This ordinance shall take effect and be in force fifteen days from time of its final passage as provided by law.

"(Passed, Signed, Attested, etc.)"

Notice of the election, which as the ordinance recites, was to be held on the day of the general statewide primary election, was duly given; but within the fifteen-day period before the specified effective date of the ordinance, certain qualified residents of Nebraska City attempted to suspend operation of the ordinance by filing a petition in compliance with the form of the referendum statute of Nebraska, Comp.St.Neb.1929, §§ 19-418, and 19-423. A sufficient number of citizens signed the petition, and the law provides that when a sufficient number (based on a percentage [15%] of the highest vote cast for any of the councilmen at the last city election) make petition to the council and protest against the passage of an ordinance, the Commissioners must reconsider the question—and if they do not repeal the ordinance they must submit the question involved to a vote of the people. The Commissioners of Nebraska City, upon their reconsideration of Ordinance 743, determined that it should not be repealed and decided further that the referendum act was not applicable to an ordinance which was in itself the vehicle for submitting the question to be acted upon to the people. The Commissioners accordingly did not suspend operation of the ordinance in order to hold an intermediate election on the question of whether there should be an election, but proceeded as though the ordinance were valid and in effect. At the election 2,198 qualified voters cast ballots, 1,307 of which (or 59.5%) favored acquiring the property by eminent domain.

In accordance with the procedure provided by the statute, the Commissioners, as the next step following the election, certified the results of the election to the Supreme Court of Nebraska and that court appointed three judges of the District Courts of Nebraska to serve as a Court of Condemnation. Summons issued from that court to the Power Company and to the trustees. The Power Company and the trustees did not undertake the burden and expense of appearing in the Court of Condemnation to prove the value of the property sought to be condemned, but, deeming the whole condemnation proceeding invalid and unauthorized, and regarding their remedy at law, if any, as inadequate, brought the present action to enjoin the Commissioners and the Condemnation Court from proceeding. In their petition for preliminary and final relief the Company and trustees alleged that the proceeding in condemnation was invalid and unauthorized, (1) because the election had been held pursuant to an ordinance which had been suspended by operation of the referendum laws; (2) because a sufficient number of voters did not vote approval of the proposition at the election; (3) because the proposition submitted at the election was too indefinite and vague and did not give adequate notice to the voters,—or subsequently to the Court of Condemnation and to the Company,—in respect to what property was to be condemned; and (4) because the City was not authorized to condemn only a part of the Company's property and hence could not take the property in Nebraska City and rural districts while refusing to take the adjacent property which depended on facilities located in Nebraska City but was owned and operat-

ed by the Company in other incorporated cities and towns.

As the federal district court had granted the prayer for the issuance of a preliminary injunction, an issue on the trial was whether the preliminary injunction should be made permanent. On this appeal from the dismissal for want of equity the Company and the trustees assign error in the refusal of the trial court to grant the permanent injunction and they contend in the points to be argued that their right to a final injunction was established upon each of the several grounds on which they based their action.

■■■ (1) There is no merit in plaintiffs' contention that the condemnation proceedings should be enjoined because the petition which was filed under the provisions of the referendum act suspended Ordinance No. 743, which provided for the election. The object of the referendum act is to enable the people to vote on questions which affect their government; and if the act were to be applied so as to enable a few people (fifteen per cent of the number who voted to elect the councilman who had most votes at the last election) to delay and obstruct an election which was already called, there would be an application of the act nullifying its purpose. Statutes in Nebraska are to be construed to effect their purpose and not so as to bring about absurd results. Hevelone v. City of Beatrice, 120 Neb. 648, 234 N.W. 791; Kelley v. Gage County, 67 Neb. 6, 93 N.W. 194, 99 N.W. 524. The call for an election must be deemed valid as effected by resolution, even if the enactment might be found imperfect under tests applicable to an ordinance. Hevelone v. City of Beatrice, supra; State ex rel. v. Marsh, 106 Neb. 547, 184 N.W. 135; see Schroeder v. Zehrung, 108 Neb. 573, 188 N.W. 237.

■■■ (2) The Company and the trustees contend that an insufficient number of the qualified voters voted to approve the proposal for acquisition of the property. This contention is based on the fact that sixty per cent of the ballots cast at a special election must favor condemnation if it is to be authorized, although a mere majority of those cast is required at a general election. § 19-702, Comp.St.Neb.1929. Plaintiffs contend that the state-wide primary election was, as to the City's proposal to undertake condemnation proceedings, a special election. This contention cannot be sustained under Nebraska law. See State ex rel. v. Marsh, 107 Neb. 607, 187 N.W. 88; State ex rel. v. Johnson, 117 Neb. 301, 220 N.W. 273; State ex rel. v. City of Nebraska City, 123 Neb. 614, 243 N.W. 858.

■■■ (3) Nor was there any vagueness or uncertainty in the proposition which by ordinance was submitted to the voters of Nebraska City in the election and which formed the basis of the further proceedings. In Drummond v. City of Columbus, 136 Neb. 87, 285 N.W. 109, 286 N.W. 779, the Supreme Court held invalid as authority for condemnation an election where the properties of the company were named and described but linked both in the conjunctive and in the disjunctive by the use of "and/or". The court decided that the voters could not tell which of the properties were to be taken. But in the present case it is evident that the Commissioners and the people of the City of Nebraska City desire to take all of the properties of the Power Company in and about Nebraska City which they may legally take, exclusive of such properties as are within the boundaries of other incorporated cities and villages. Such properties may be excluded from the condemnation without raising the issue of due process, as the company will, under the terms of the statute, receive compensation for whatever value it loses by having these properties detached from its system—or the system detached from them. State v. Fricke, 126 Neb. 736, 254 N.W. 409; see Grantham v. City of Chadron, 8 Cir., 20 F.2d 40; Cf. City of York v. Power Company, 8 Cir., 109 F.2d 683, decided Feb. 15, 1940.

(4) The more serious question is whether the condemnation proceedings should be enjoined on the ground that the City has undertaken to acquire only that part of the property of the Company which is located outside of incorporated cities and villages and has excluded from the condemnation those parts of the Company's property which are located within such cities and villages. The plaintiffs contend that the applicable law contemplates a taking of the entire property or none. Numerous statutory provisions must be considered in order to answer the question.

The codified statutes of Nebraska contain sections relating to condemnation of public utility property by municipalities under the provisions of three different chap-

ters: Chapters 16, 19 and 70. Chapter 16 is a code of laws applicable to cities of the first class, 5,000 to 25,000 inhabitants, which includes the City of Nebraska City. In Article 6 of this Chapter there are sections, most of which were passed in 1901, which govern the construction, condemnation, ownership and operation of public utilities. Gas works may be acquired except as they extend over and beyond a ten mile radius from the city, section 16-601, and waterworks and electric service systems may be constructed and operated with incidental powers of eminent domain throughout a radius of fifteen miles, section 16-657. But Chapter 16 does not contain provisions which govern a municipality's power to condemn property of a utility which furnishes different kinds of utility service and is operated as a unit. Chapter 19, which deals with laws applicable to particular classes of cities, contains Article 7, headed "Eminent Domain (Applicable to Cities of the First or Second Class)", the sections of this Article having been enacted in 1919. Article 7 outlines the procedure to be followed by a city in condemning the property of a utility which may hold a franchise from the city where the utility's property is located partly within and partly without the city. A proviso in the first section of the Article applies to utility properties which furnish different kinds of service and are operated as a unit; in such cases the city must take "the entire property and not * * * any divided or segregated part thereof". Section 19-701. This proviso concededly describes the utility properties of the plaintiffs in the present case in that this company furnishes different kinds of service and operates as a unit. The provisions are relied on as the basis of the plaintiffs' contention that these condemnation proceedings are invalid.

But this 19th Chapter of the codified laws of Nebraska deals only with the matter of condemnation and does not confer or enlarge the power of a city to own and operate utilities. The language of section 19-703 contains the legislature's recognition that power to own and operate utility properties is a necessary prerequisite to the power of a municipality to acquire them by condemnation. The section reads in part: " * * * provided, however, that when part of the public utilities appropriated under this act extends beyond the territory within which the city exercising the right of eminent domain, has a right to operate the same, the court of condemnation in determining the damages caused by the appropriation thereof, shall take into consideration the element of fact that such portion of the utility beyond such territory is being detached and not appropriated by the city and the court of condemnation shall award damages by reason of such detachment and the destruction in value and usefulness of the detached and unappropriated property as it will remain and be left after the detachment and appropriation, * * *."

The plaintiffs contend that their property which is located within the boundaries of adjacent incorporated cities and towns does not "extend beyond the territory within which the city (Nebraska City) has a right to operate the same".

Chapter 70 of the Compiled Statutes contains sections relating to public power districts and corporations. Article 6, Comp. St.Supp.Neb.1939, § 70-601 et seq., provides that a municipality which owns and operates an electric power utility may extend its operations to beyond the limits of the municipality, and the Article also governs, among other matters, the sale or lease to private persons or corporations of any public utilities owned by a municipality. Article 7, Comp.St.Supp.Neb.1939, § 70-701 et seq., provides for the creation of public power and irrigation districts and defines their powers. The provisions of Article 6 were enacted in 1931 and those of Article 7 in 1933; some of the provisions of Article 7 have been subsequently amended. Power districts are public corporations composed of the territory of one or more municipalities (defined in the Act as meaning, when used in relation to the organization of districts, "any county, city, incorporated village or voting precinct in this state", Comp.St.Supp.Neb.1939, § 70-701). Power districts can exercise the power of eminent domain under laws theretofore applicable to internal improvement irrigation projects (Comp.St.Neb.1939, § 70-707), but the City of Nebraska City has not organized as a power district and does not proceed under the provisions of Article 7 of the Chapter, which by one of the Sections of the Article, Sec. 70-714, "Shall be deemed cumulative and shall not limit, or affect or be limited, or affected by any other provisions of law pertaining to counties, cities, villages, irrigation districts, public electric light districts, public power districts, public corporations, or other municipalities or political subdivisions of this state except as is oth-

erwise provided in Sec. 70-713, as amended."

Section 70-713, to which section 70-714, supra, refers, does not deal with eminent domain but with the relation between power districts and the cities or towns served by them. The plaintiffs do not contend that City of Nebraska City can serve adjacent incorporated cities and villages under the provisions and restrictions which control power districts, but contend that it is empowered to operate within such cities and villages under the provisions of Section 70-601.

Section 70-601 is as follows: "Governmental Sub-divisions, Transmission Lines and Service, Extend Beyond Corporate Boundaries. Any city, village, or public electric light and power district within the state, which may own or operate, or hereafter acquire, or establish, any electric light and power plant, distribution system, and/or transmission lines may, at the time of, or at any time after such acquisition or establishment, extend the same beyond its boundaries, and for that purpose is hereby authorized and empowered to construct, purchase, lease, or otherwise acquire, and to maintain, improve, extend, and operate electric light and power plants, distribution systems and transmission lines, outside of the boundaries of such city, village, or public electric light and power district, for such distance and over such territory within this state as may be deemed expedient. In the exercise of the power granted by this section any such city, village, or public electric light and power district may enter into contracts to furnish and sell electrical energy to any person, firm, association, corporation, municipality, or public electric light and power district. No such construction, purchase, lease, acquisition, improvement, or extension of any additional plant, distribution system and/or transmission lines, however, shall be paid for except out of the net earnings and profits of one or more or all of the electric light and power plants, distribution systems and transmission lines, of such city, village, or public electric light and power district. The provisions of this act shall be deemed cumulative and the authority herein granted to cities, villages and public electric light and power districts shall not be limited or made inoperative by any existing statute."

Section 70-602 supplements this section by providing that a city, village, or public electric light and power district, may "enter into agreements to connect and interconnect its electric light and power plant, distribution system and/or transmission lines with the electric light and power plant, distribution system and/or transmission lines of any one or more other cities, villages, or public electric light and power districts in this state, upon such terms and conditions as may be agreed upon between the contracting cities, villages and public power districts."

Section 70-603 provides that, "In lieu of the issuance of bonds or the levy of taxes as otherwise by law provided, and in lieu of any other lawful methods or means of providing for the payment of indebtedness, any city, village, or public electric light and power district within this state shall have the power and authority, by and through its governing body or board of directors, to provide for or to secure the payment of the cost or expenses of purchasing, constructing, or otherwise acquiring, extending and improving, any real or personal property necessary or useful in its operation of any electric light and power plant, distribution system, and/or transmission lines, by pledging, assigning, or otherwise hypothecating, the net earnings or profits of such electric light and power district, city, or village, derived, or to be derived, from the operation of such electric light and power plant, distribution system, and/or transmission lines, by pledging, that end, to enter into such contracts and to issue such warrants or debentures as may be proper to carry out the provisions of this section."

The Supreme Court of Nebraska has construed Section 70-601 in three different cases, Interstate Power Company v. City of Ainsworth, 125 Neb. 419, 250 N.W. 649; Southern Nebraska Power Company v. Village of Deshler, 130 Neb. 598, 265 N.W. 880; and City of Curtis v. Maywood Light Company, Neb., 288 N. W. 503.

In Interstate Power Company v. City of Ainsworth, 125 Neb. 419, 250 N.W. 649, the power company sued as a taxpayer to enjoin the city from performing a contract for the construction of an electric light and power plant and distribution system which was by the terms of the contract to be paid for only out of future net earnings of the plant. The Supreme Court of Nebraska allowed the

relief on the ground that Section 70-601 does not give a city power to construct a plant to be paid for from future earnings and that no other statute nor the doctrine of implied power would sustain such a contract. In Southern Nebraska Power Company v. Village of Deshler, 130 Neb. 598, 265 N.W. 880, the Supreme Court of Nebraska refused to enjoin the Village from performing a contract to enlarge and extend an electric light plant and system. The Village planned to erect a plant estimated to cost $77,300. It paid for the first unit of the new system by issuing bonds in the amount of $29,500, leaving the balance of the cost of the construction and provision for payment to the future. After the first unit had been put into operation, the Village entered into a contract to construct the rest of the system at a price of $53,786, which was to be paid for from the future earnings of the plant. The Power Company sought to enjoin performance of this contract, but the Supreme Court of Nebraska held that the contract was authorized as a contract providing for improvements and extension of the plant and that payment for the extension and improvement was authorized under section 70-603.

In City of Curtis v. Maywood Light Company, Neb., 288 N.W. 503, 505, the City of Curtis brought action to rescind a contract it had made with the Light Company to purchase properties of the Company within the incorporated town of Maywood. The City of Curtis contended that the contract should be rescinded because it had exceeded its powers in making the contract and could not own or operate electric utilities in another incorporated municipality. A decision rendered against the City in the trial court was affirmed by the Supreme Court in an opinion concurred in by four judges, —three judges dissenting. The majority of the court in their decision relied first upon what they deemed the intention of the Legislature as expressed in Chapter 70, Article 6 of the Compiled Statutes Supp., particularly Section 70-601. The Court said it would not deny effect to this intention, quoting Johnson v. United States, 1 Cir., 163 F. 30, 32, 18 L.R.A.,N. S., 1194, to the point that the court would not say to the legislators, "We see what you are driving at, but you have not said it, and therefore we shall go on as before."

The court recognized in the majority opinion that a municipality has only such powers as are conferred upon it by the state, but it found in the statutory provisions the requisite powers for the performance of the contract of the City of Curtis. The court quoted from Section 70-602 the provisions which authorize a city to connect and interconnect its electric system with that of another city, village or district "upon such terms and conditions as may be agreed upon" between the parties. It quoted from Section 70-601 that a city was empowered and authorized to extend its electric system "beyond its boundaries * * * and operate * * * outside of the boundaries * * * for such distance and over such territory within this state as may be deemed expedient". It called attention to the provision that "the authority herein granted * * * shall not be limited or made inoperative by any existing statute". The court said, "We have but to give force * * * to clear and unambiguous language of this statute to sustain the transaction here involved in all its details." Subsequently the court discussed the objection that municipal ownership and operation of public utility service within the boundaries of another municipality would involve conflict of rights and government authority. The court answered this objection by holding that the operation of the utility service was undertaken by the city outside of its functions of government, and that since it would operate within the other municipality as a private corporation, no conflicts could arise. The minority dissented on the ground that they deemed it unlawful for one municipality to operate utility service within the boundaries of another municipality.

The Power Company and the trustees in the present case argue that since the City of Curtis case interprets Section 70-601 as authorizing operation of utility service by one municipality within the boundaries of another, the condemnation scheme of the City of Nebraska City is invalid since the City, under the "Eminent Domain" Article, Section 19-701, was required to take "the entire property and not * * * any divided or segregated part thereof". We must agree that Section 70-601 does empower a city to acquire by condemnation properties which are located outside of what would other-

wise be the territorial limits "beyond * * which the city exercising the right of eminent domain, has a right to operate the same", as this is the necessary result of the Supreme Court of Nebraska's interpretation of that section. But in this condemnation, the City is not attempting to acquire the plaintiffs' property located in Nebraska City, under the provisions of Section 70-601. The decision in Interstate Power Company v. City of Ainsworth, supra, is not applicable because Nebraska City is acquiring the main portion of the Company's local property under a different law, namely, the "Eminent Domain" provisions of Chapter 19, Article 7. Those provisions had conferred valid powers upon the City prior to the enactment of Section 70-601. Since the City is lawfully acquiring the nucleus and greater part of the Company's property under valid power possessed by it, its right to acquire other property beyond the fifteen mile radius is plainly conferred by the terms of Section 70-601: "Any city * * * which may * * hereafter acquire * * * any electric light and power plant, distribution system, and/or transmission lines may, at the time of * * * such acquisition * * * extend the same beyond its boundaries, and for that purpose is hereby authorized and empowered to * * * acquire, and to maintain, improve, extend, and operate electric light and power plants, distribution systems and transmission lines, outside of the boundaries of such city * * for such distance and over such territory within this state as may be deemed expedient."

The language of this Section, it is true, gives authority to extend the acquisitions only "for such distance and over such territory within this state as may be deemed expedient". The passage of the ordinance ·or resolution, numbered 743 and quoted supra, and the vote thereon indicated that the Commissioners and the people of Nebraska City deem it expedient to condemn, "all real, personal and mixed property of all kinds and description owned by said corporation which constitutes a part of or are appurtenant to or are used in connection with said public utility properties in serving said City and its inhabitants, whether such properties be located within or without the corporate limits of said City; and including also the electric transmission and distribution lines of said Central Power

Company which lie outside the corporate limits of said City which receive current from the plant in said City and which serve only private consumers outside of other incorporated cities or villages."

The Commissioners and the people do not deem it expedient to include "any transmission lines or distribution systems serving other incorporated cities or villages or the inhabitants thereof." Hence the property within other incorporated municipalities does not come within the terms of the Act.

■ The opinion of the court in City of Curtis v. Maywood Light Company, supra, does not indicate that a municipality which operates its own utility service *must* also operate within other municipalities. It goes only to the extent that, given the proper conditions and circumstances, including some agreement between the municipalities, the municipality which operates the service may validly extend it into the municipality which agrees upon terms to receive it. Neither the cited case nor the provisions of Chapter 70, Article 6, indicate that extension of municipal service is to be coerced, but rather that such extension is a matter of discretion and judgment which when once expressed is to be given force and effect. The intention of the Legislature of Nebraska is further illustrated in the provisions of Article 7 of Chapter 70. There the following proviso is made to limit the sale of electric utilities by power districts: "Whenever any public power district * * * shall, as herein provided, acquire by purchase * * * or otherwise, any electric distribution system, or any part or parts thereof, situated within or partly within any city or village, if any part of such system be within such city or village said acquisition shall be upon the condition that such city or village may purchase, and such district shall be required to sell to such city or village, such electric distribution system, situated within or partly within such city or village, *but not within the corporate limits of any other city or village,* by paying" etc. (Emphasis ours). Section 70-712.

This provision indicates that the Legislature had no intention of allowing to a city or village any coercive power to extend its municipally owned utility service into the boundaries of another incorporated municipality. According to

Section 70-714 of Article 7 of Chapter 70, the above quoted proviso is not to limit or affect, or to be limited or affected by other provisions relative to municipalities and utilities which provisions are not contained within Article 7. But Section 70-714 does not make such an exception for Section 70-713, formerly referred to in connection with the condemnation provisions of Article 7 of Chapter 70. That section reads as follows:

"Rates and Charges, Powers of Board of Directors, Lease or Alienation of Franchises and Physical Properties Prohibited.

"a. The board of directors of any district organized under this Act shall have the power and be required to and shall fix, establish and collect adequate rates, tolls [etc.]

"b. In the event that any such district shall lease, purchase or acquire in any manner the generating plant, distribution system or other property of an existing utility then or theretofore furnishing electrical energy for heating, lighting, power or other purposes for the use or benefit of any city of whatever class or village in the state of Nebraska, or its inhabitants, and for use within the corporate limits of said city or village, such district shall be bound by, shall carry out and shall perform the terms and conditions of any franchise or contract, assigned to such district and shall comply with the provisions of any existing applicable laws or ordinances under which said existing utility, such district's predecessor or assignor, operated at the time of such lease, purchase or acquisition of the generating plant, distribution system or other property of said existing utility shall have been made. Any such district shall be required at all times to have a valid and subsisting franchise, either running to it as original grantee from said city or village or assigned to it by or through a grantee of said city or village, if such district proposes to generate * * * and sell * * * to said city or village or to its inhabitants as a condition precedent to the operation of said district's electric utility or utilities within said city or village, in every case and to the same extent as where a private corporation is required to have such valid and subsisting franchise to operate its electric utility or utilities within said city or village. All franchises granted by said city or village to any such district to operate said district's electric utility or utilities within the corporate limits of said city or village, may provide the maximum rates that may be charged by such district for furnishing said electrical energy to said city or village or to its inhabitants during the franchise period; and said franchises shall be granted in the same manner and upon the same terms and conditions as may now, or hereafter be provided by law for granting franchises to private corporations by said cities or villages. Contracts, other than franchises, which said city or village is empowered to make with any such district to furnish said city or village, or its inhabitants, with electrical energy, shall be made in the same manner and upon the same terms and conditions as said city or village is now or hereafter empowered to make with any private corporation to furnish said city or village or its inhabitants with electrical energy: Provided [exception where plant formerly owned by United States of America] * * *."

This section and Section 70-602, quoted above, indicate that a public power project is to extend its lines into another municipal corporation's boundaries only upon contract, agreement or franchise. That the municipality which owns and operates a utility is not required to extend its facilities inside the corporate boundaries of another municipality appears from the language of Section 70-601, that such an extension "may" be made "for such distance and over such territory * * * as may be deemed expedient". The City of Nebraska City does not deem it expedient to extend service within the boundaries of other incorporated cities and villages, and has no contracts or agreements with such municipalities. It properly excluded from its condemnation the property of the Company which is located in such cities and villages. It may be noted that the minority opinion of the Supreme Court of Nebraska in City of Curtis v. Maywood Light Company, supra, also supports the exclusion of property made by the City in the present case, because, according to the view of the minority, a municipality has no authority to operate a utility within the boundaries of another incorporated city or village.

 The Power Company's properties which furnish gas and water utility service are to be taken by the City except as such properties lie outside of the territory in which the City is empowered to operate

them. The laws of Nebraska make adequate provision for the raising of money by cities to pay for property acquired under condemnation and since the Company must receive its payment before the City can take possession, the Company may not in this proceeding question how the City is to obtain the money with which it will pay. See Slocum v. City of North Platte, 8 Cir., 192 F. 252; Village of Oshkosh v. Fairbanks-Morse & Co., 8 Cir., 8 F.2d 329.

The district court did not err in entering judgment dissolving the temporary injunction and dismissing the action, and the judgment is affirmed.