KANSAS–NEBRASKA NATURAL GAS COMPANY, a Kansas Corporation, Plaintiff,

v.

VILLAGE OF DESHLER, NEBRASKA, a Municipal Corporation, and E. C. Hornbostel, Chairman of the Board of Trustees of the Village of Deshler, Nebraska, and William Posvar, Erwin Uphoff, Ed. F. Smith and John Malpert, members of the Board of Trustees of the Village of Deshler, Nebraska, and the Court of Condemnation, composed of Cloyde B. Ellis, Fay H. Pollock and Edmund Nuss, Defendants.

Civ. No. 0376.

United States District Court
D. Nebraska.

Aug. 12, 1960.

James D. Conway, Conway & Irons, and Elmer J. Jackson, Hastings, Neb., for plaintiff.

W. O. Baldwin, Hebron, Neb., Herman Ginsburg, Ginsburg, Rosenberg & Ginsburg, Lincoln, Neb., for defendants, except Court of Condemnation and its members.

DELEHANT, District Judge.

It may be understood that, of the identified defendants, those named as, "the Court of Condemnation, composed of Cloyde B. Ellis, Fay H. Pollock and Edmund Nuss," have taken no active part in this proceeding, and filed no pleadings herein, in relation to the controversy upon which ruling is being announced. Thus far, the litigation has been conducted, as the nature of the case suggests, between the plaintiff on the one hand, and, on the other, the defendants, The Village of Deshler, Nebraska, a Municipal Corporation, and E. C. Hornbostel, Chairman of the Board of Trustees of the Village of Deshler, Nebraska, and William Posvar, Erwin Uphoff, Ed. F. Smith and John Malport, members of the Board of Trustees of the Village of Deshler, Nebraska. It is, therefore, to those parties respectively that the court will refer herein by the employment of the several designations, "plaintiff" and "defendants," without further particularization respecting the "defendants."

Observed by the court, but accorded no practical consideration, are two irregularities in the names of certain defendants.

*Erwin* Uphoff is declared in the Marshal's return to have been served with process under the name of *Edwin* Uphoff. Any irregularity thus disclosed is obviated by his joining in the answer as *Erwin* Uphoff. Then, another defendant member of the Board of Trustees of the Village of Deshler, Nebraska, is both designated in the complaint and served with process as *Ed. F.* Smith. But no such name is given by anyone joining in the signature of the answer. Rather, a person designated as *S. F.* Smith appears among the defendants in behalf of whom the answer is made, despite a recital in the opening paragraph of that pleading that *Ed. F.* Smith joins with others in tendering it. It may be assumed that the reference to *S. F.* Smith is mistaken. If counsel desire to pursue any steps in the way of clarification of the confusion, they may do so. On its part, the court does not even suggest that any such step is necessary.

Preliminary mention is also made that within the court's awareness, during the pendency of the case, the Honorable Cloyde B. Ellis, one of the members of the Court of Condemnation, has died. His death poses no problem in the present ruling. It is contemplated as a possibility, and provision is made for a substitution in his stead, by Section 19–703, R.S. Neb.1943.

Regard being had to the course of the pleading in, and to the manner of submission of, the case, it is considered to be appropriate that the pleadings be recalled at substantial length. That effort will allow a corresponding abbreviation, through the elimination of much repetition, in the statement of the facts.

By its complaint, the plaintiff makes the following allegations, which by the defendants' answer, are unequivocally admitted.[1]

"I. The defendant, Village of Deshler, Nebraska, is a village, organized and existing as a municipal corporation under the laws of Ne-

---

1. The numbering of the admitted allegations is taken from the paragraphs of the complaint in which they are respectively set out.

braska. Defendant, E. C. Hornbostel, is the duly elected, qualified and acting Chairman of the Board of Trustees of the Village of Deshler, Nebraska, and defendants, William Posvar, Erwin Uphoff, Ed. F. Smith and John Halpert, are the duly elected, qualified and acting members of the Board of Trustees of such village, and each of such individual defendants is a resident of such village. The amount in controversy is in excess of $3,000.00 [2] exclusive of interest and costs.

"II. Plaintiff is a Kansas corporation, qualified to do business in Nebraska, with its principal place of business at Phillipsburg, Kansas, and is engaged in the purchase, production, transmission, distribution and sale, both wholesale and retail, of natural gas in the states of Kansas, Nebraska and Colorado. Plaintiff is a Natural Gas Company, as defined in the Natural Gas Act, 15 U.S. C.A. §§ 717–717w, as amended, and its transmission, operations and sales of gas at wholesale in the State of Nebraska are subject to the jurisdiction of Federal Power Commission. Plaintiff owns and operates a gas distribution system within the limits of defendant, Village of Deshler, which system has a value in excess of $3,000.00.

"III. Plaintiff in the course of its business is servicing gas customers from its distribution system in the defendant Village of Deshler, under the terms of a franchise dated March 2, 1954, a copy of which is set out in detail as a part of the complaint. Plaintiff accepted the terms of such franchise by a written instrument dated April 7, 1954, by filing such instrument with the Village Clerk of Deshler, and a copy of such instrument with the information touching the filing thereof is set out in, and made a part of, the complaint."

"VII. At the regular election held for and within the Village of Deshler on April 2, 1957, (at which the electors within such village voted upon the question then and there submitted to them, *vide infra*, whether the Village of Deshler should, by the exercise of the power of eminent domain, under the provisions of Chapter 19, Article 7, Reissue, Revised Statutes of Nebraska for 1943, as amended, appropriate and acquire the complete gas system of the plaintiff then serving the Village of Deshler) 460 electors voted on such question, of whom 272 voted 'yes' and 188 voted 'no' upon the question of such appropriation and acquisition.

"VIII. On April 22, 1957, the Village of Deshler certified the result of such election to the Supreme Court of the State of Nebraska. Thereupon, and on April 27, 1957, the Supreme Court of the State of Nebraska appointed Cloyde B. Ellis, Fay H. Pollock and Edmund Nuss, being District Judges of the State of Nebraska, as members of a Court of Condemnation to fix the value of plaintiff's property located in the Village of Deshler. The Court of Condemnation, thus designated, met and organized in the court house of Thayer County, Nebraska [3], on May 31, 1957, and thereupon directed defendant, Village of Deshler, to file its Petition in Condemnation of plaintiff's property. Prior to the institution of this proceeding, the defendant, Village of Deshler, had filed with and before such Court of Condemnation its petition to condemn the plaintiff's property in manner and form identical with a copy thereof attached to, and made a part of, plaintiff's complaint herein. Plaintiff was duly served with a copy of such Petition in Condemnation, and with notice requiring it to answer such Petition in Condemnation on or

2. The suit was instituted on June 27, 1957.

3. Within which county the Village of Deshler is located.

before July 22, 1957. And such Court of Condemnation had fixed August 19, 1957 as the date for the holding of hearing to ascertain and find the value of plaintiff's gas distribution system in the Village of Deshler, Nebraska.

"IX. The Petition in Condemnation so filed by defendant, Village of Deshler, Nebraska, with and before the Court of Condemnation, had and has attached to it a description of the property to be condemned, which is identical in content with the description of property contained in the notice of condemnation upon which such election of April 2, 1937 was held."

"XI. In addition to providing service to the gas customers in the defendant Village of Deshler, Nebraska, under its franchise already referred to herein, plaintiff has been and is selling gas to the Electric Generating Plant owned by defendant, Village of Deshler, Nebraska, under the terms of a contract for such service in writing between the plaintiff and the Village of Deshler, Nebraska, bearing date February 20, 1953, but initially effective as of April 1, 1953, of which contract a true copy is set out in and as a part of the complaint herein."

In addition to those unequivocally and unreservedly admitted allegations, the plaintiff, in its complaint, makes other allegations, which in their answer, the defendants either deny categorically, or admit only partially or with express reservation. Again resorting to the numbering of paragraphs in the complaint, those further allegations are now summarized. And in the summary which immediately follows, the allegations of the several paragraphs of the complaint are first set out in the way either of summary or of reflection by copy; and, immediately after that reflection of the content of each paragraph of the complaint, the response to the allegations of such paragraph of the complaint, made by defendants in their answer is disclosed. This device is resorted to in an effort to bring into the closest practicable proximity the factual declarations of the several parties in respect of each point discussed in their pleadings.

IV. The Chairman and Board of Trustees of the Village of Deshler, Nebraska, on March 5, 1957, passed a resolution, providing for the submission of a purported "notice of condemnation" of the gas distribution system of plaintiff in the Village of Deshler, Nebraska, and certain other property, to the electors of the Village of Deshler, Nebraska, allegedly pursuant to the requirements of Section 19–701, R.S.Neb.1943, of which resolution a true copy is attached to, and incorporated into, the complaint. Thereafter, on March 13, 20 and 27, 1957, Notice of Election on the "adoption of the purported Notice of Condemnation"[4] was published in the Deshler, Nebraska Rustler, of which notice of election a copy

---

4. In the paragraph of the complaint numbered IV, as in many other paragraphs of the complaint, reference is made to the submission to the electors of "notice of condemnation." The choice of language thus reflected is inexact and rather unfortunate. The resolution and notice of election and the form of ballot, to which the plaintiff is really alluding in its complaint, are all set out verbatim in the complaint. And they show that the resolution of March 5, 1957 contemplated, and provided for, the submission to the electors of the Village, at the regular election to be held on April 2, 1957, of the question whether the Village should by the power of eminent domain, appropriate and acquire the plaintiff's complete gas system then and now serving the Village of Deshler (with an extensive enumeration of the supposed items thereof) and not for the submission to the voters of any "notice of condemnation," whatever that might mean in the existing context. And without repetition, it may sufficiently be observed that the pubished notice of election, and the ballot form, consistently carry forward, and serve as steps to effect, the submission to the electors of the same question contemplated in and by the resolution, rather than any "notice of condemnation."

is also set out verbatim in the complaint herein.

Answering such paragraph IV of the complaint, the defendants admit the allegations thereof respecting the adoption of the resolution for the submission to the legal voters of the defendant, Village of Deshler, of the question of the purchase of plaintiff's gas distribution system in the language of such resolution as set out in the complaint, and the giving of notice of such election in the language set out in the complaint, and the publication of such notice, and the pursuit of such action by the village under the provisions of Section 19–701, R.S. Neb.1943. Otherwise, the defendants deny the allegations of paragraph IV of the complaint.

V. At the regular election held in the Village of Deshler on April 2, 1957 "the purported notice of condemnation" [4] was presented to the electors of such village purportedly pursuant to the requirements of Section 19–701, R.S.Neb.1943.

Essentially the foregoing allegation of paragraph V of the complaint is admitted in the answer, but with the attendant allegation that the presentation to the electorate was in strict—not merely purported—compliance with Section 19–701, R.S.Neb.1943.

VI. A copy of the ballot containing "the purported notice of condemnation" so presented to the electors at such election is set out as an exhibit to, and incorporated into, the complaint.

By their answer, the defendants admit that the exhibit identified in paragraph VI of the complaint is a true copy of the ballot thus presented to the electors at such election; but they then "deny each and every other allegation in paragraph VI of plaintiff's complaint contained." That denial serves no practical purpose except to challenge the accuracy of the phrase, "the purported notice of condemnation."

X. If the defendant, Village of Deshler, acquires plaintiff's gas distribution system, and desires to purchase gas from plaintiff for resale to the gas customers in the village, such sale by plaintiff would be subject to the jurisdiction of the Federal Power Commission, and could be made only upon plaintiff and defendant, Village of Deshler, Nebraska, entering into a service agreement, and upon plaintiff's applying thereafter for, and being granted, a Certificate of Public Convenience and Necessity by Federal Power Commission to make such sale. Such sale by plaintiff, and the terms and conditions of such service agreement, would be subject to the terms and provisions of plaintiff's Federal Power Commission Gas Tariff, first revised Volume 1, of which a copy is attached to, and incorporated into, the complaint.

In their answer, defendants admit so much of the allegations of such paragraph X of the complaint, as allege that the sale by the plaintiff to the defendant, Village of Deshler, Nebraska, for resale to gas customers in the village would be subject to the provisions of the Natural Gas Act, and the lawful rules, regulations and tariffs promulgated by Federal Power Commission. Otherwise, the defendants, by their answer, deny the allegations of paragraph X of the complaint.

XII. This paragraph of the complaint is copied in full in the following language:

"That said purported notice of condemnation submitted to the electors of the Defendant Village as set out in the resolution, marked Exhibit 'C', attached hereto, and in the notice, marked Exhibit 'D', attached hereto, and the ballot, marked Exhibit 'E', attached hereto, is illegal and void for the following reasons:

"(1) That said notice of condemnation purports to condemn property of Plaintiff which is not subject to the power of eminent domain possessed by Defendant Village, to-wit:

"(a) All contracts for the purchase of (or?) the sale of gas; and

"(b) The right to purchase wholesale gas from Plaintiff.

4. See note 4 on page 307.

"(2) That Defendant Village and Defendant Chairman and Members of the Board of Trustees by said notice of condemnation and proceedings in connection therewith intend and propose to avoid, evade, circumvent, nullify, cancel and destroy the restriction contained in Plaintiff's Federal Power Commission Gas Tariff, First Revised Volume No. 1, Section 2 a. of Rate Schedule G–1, prohibiting the gas purchased from Plaintiff by Defendant Village thereunder for resale from being used in the electric generating plant of Defendant Village, contrary to the terms of said tariff and contrary to the provisions of the Natural Gas Act.

"(3) Said notice does not include and is not intended by the defendant Chairman and Board of Trustees to cover or apply to approximately 7,598 feet of service stubs owned by Plaintiff connecting Plaintiff's distribution mains to the service lines of Plaintiff's customers in Deshler, which ownership is disputed and not recognized by said Defendant.

"(4) That the description of Plaintiff's property proposed to be condemned in said notice of condemnation is insufficient, incomplete, inadequate, inaccurate and erroneous and does not meet the requirements of Section 19–701, and following R. R.S.Nebraska, 1943, to-wit:

"(a) Equipment installed in Plaintiff's Town Border Station in Defendant Village for removing foreign materials from the gas and which is not part of Plaintiff's distribution system in Defendant Village is described in said notice as gas odorizing equipment subject to condemnation by Defendant Village.

"(b) Various gas mains which are described in said notice as 'high' pressure are actually 'intermediate' pressure.

"(c) A portion of an existing intermediate pressure main is neither described nor referred to therein."

In their answer, the defendants deny all of the allegations of paragraph XII of the complaint, and supplement that denial with certain affirmative assertions. The pleading thus adverted to is also copied in full as follows:

"12. Defendants deny each and all of the allegations of Paragraph XII of the complaint. Defendants allege that as a part of the distribution of gas through the distribution system to be acquired by the defendant Village, it has the right to, and intends to acquire the right to furnish gas to all of the inhabitants and users in said village; if the plaintiff has any outstanding contracts with any gas users in said village, other than with the Village itself, such contracts, insofar as they constitute property of the plaintiff, used in the ownership and operation of the gas distribution system in Deshler, must be included in said condemnation proceeds, and the fair value thereof paid to the plaintiff thereunder. Defendants further allege that the Village has the legal right to purchase wholesale gas from the plaintiff. Defendants allege that they intend to, and the proceedings set forth in plaintiff's complaint do, legally provide that the Village of Deshler, Nebraska shall pay to the plaintiff for all property belonging to the plaintiff and constituting the complete gas system serving the Village of Deshler, Nebraska."

XIII. For the reasons set forth in paragraph XII of the complaint, the question of acquiring plaintiff's property was not properly presented to the electors of the Village of Deshler, Nebraska, as required by law, and such election was illegal and void.

The defendants in their answer simply deny the assertions of paragraph XIII of the complaint, which are actually not factual averments, but rather tendered conclusions of law argumentatively advanced.

XIV. Unless restrained, the defendants will proceed to the fixing of the

value for plaintiff's gas distribution system located in the Village of Deshler, Nebraska, and upon the making of an award by such Court of Condemnation, defendant, Village of Deshler, Nebraska, will claim the right to take possession of plaintiff's gas distribution system forthwith upon the tender of the amount of such award to plaintiff by such Village of Deshler, Nebraska, and plaintiff is informed and believes that such Village of Deshler, Nebraska, intends so to tender the amount of such award to plaintiff, and to take possession of such gas distribution system.

Those averments of paragraph XIV of the complaint, defendants by their answer admit, but with this reservation, that they allege that defendant, Village of Deshler, Nebraska, will proceed in accordance with the provisions of Section 19–704, R.S.Neb.1943, but the defendants are not able presently to state, and do not know, whether defendant, Village of Deshler, Nebraska, will elect to abandon the condemnation proceedings, as provided by such statute, until after the determination and filing of a finding of value by the Court of Condemnation.

XV. Despite plaintiff's repeated allegation of the illegality and nullity of the election, supra, the Court of Condemnation, and its members, propose to make an award, fixing the value of plaintiff's property located in the Village of Deshler, Nebraska, although without authority so to do, and the Village of Deshler, through the Chairman and members of its Board of Trustees, though similarly without authority, propose to acquire such property of plaintiff by the exercise of the power of eminent domain. Such acts will cause irreparable damage to plaintiff, which is without adequate remedy at law for its protection.

Responsive to the averments of paragraph XV of the complaint, defendants admit that the Court of Condemnation proposes to make an award fixing the value of the property involved, and the answering defendants intend to proceed in all respects as provided by Chapter 19, Article 7, R.S.Neb.1943, and to exercise all the rights and powers and privileges, by such Article conferred upon them. And the defendants proceed to deny all other allegations of the paragraph of the complaint, thus really denying only the invalidity of their proposed course, and that of the Board of Condemnation.

The court has now reflected the factual averments of plaintiff's complaint, and the defendants' responses thereto made in its answer. In further separately numbered paragraphs of their answer, the defendants make the following affirmative allegations:

16. It has been agreed between plaintiff and the answering defendants that the Court of Condemnation need not file any pleadings herein, and that the failure to plead shall involve no admission on its part of any allegation of the complaint, and also that all proceedings before the Court of Condemnation be stayed until after the determination of this action as between plaintiff and the answering defendants, and that any judgment herein as between the plaintiff and the answering defendants be likewise binding upon the Court of Condemnation, except that no costs be taxed herein against the Court of Condemnation, or any of its members.

17. Pursuant to the provisions of Section 7 of its franchise, of which a copy is incorporated into the complaint herein, plaintiff was required to furnish to the Clerk of the Village of Deshler, Nebraska, and at all times to maintain therein, a map showing the size and location of all mains laid in its distribution system in such village. Plaintiff failed to comply with that requirement. Thereupon, on or about August 8, 1956, the Village Clerk of the Village of Deshler, Nebraska, made upon the plaintiff a request for such map. Shortly thereafter, plaintiff caused to be delivered to such Village Clerk a map, which plaintiff represented to be a true map showing the size and location of all gas mains laid in such village, and to be in compliance with its franchise. The defendant, Village of Deshler, Nebraska, thereupon

relied on the map thus provided for it by plaintiff. The size and location of all mains, as shown by such map, were included in the resolution for election, copy of which is set out in plaintiff's complaint, in the notice of election pursuant to such resolution, in the official ballot for the election, and in the petition before the Court of Condemnation, of each of which items a copy is set out in plaintiff's complaint. In each of those instruments, commencing with the resolution, supra, the description and location of all mains in such distribution system were in strict accord with the map so furnished by the plaintiff. If there are any insufficiencies or deficiencies in the description of the size or location or quantity of mains in any of such instruments, or if any mains claimed to belong to plaintiff are not described in, or are omitted from, any of such instruments, such insufficiency, inadequacy, or inaccuracy of description was due entirely to the omission of the pertinent item or items by the plaintiff from such map, and exist in such map. The defendants had a right to, and did, rely on the map thus furnished by plaintiff in the preparation of all of such instruments; and any error in the description, or omission therefrom, or failure of proper description, is due entirely to the acts and conduct of plaintiff in the omission of the items involved from the map furnished by it. The plaintiff is barred and estopped from claiming or asserting any errors or insufficiencies in the description of its distribution system within the Village of Deshler, Nebraska, in the several instruments pertinent to such election, insofar as the descriptions therein are in accord with the map furnished by plaintiff to the Village Clerk of the Village of Deshler, Nebraska.

The service and filing herein of a reply by plaintiff was neither necessary nor appropriate. Rule 7, Federal Rules of Civil Procedure, 28 U.S.C. The answer of defendants contains neither any "counterclaim denominated as such" to which a reply would be appropriate, nor

any "cross-claim" to which an answer might be tendered. Nevertheless, plaintiff served and filed a reply. Since it is a part of the files, it will not be ignored, but will now be analyzed briefly.

The reply, first, denies "the affirmative allegations of paragraph 12" of defendants' answer (see exact quotation, supra, of that paragraph), and then asserts that the answering defendants are estopped to assert, and barred from asserting, in such paragraph 12, that:

(a) defendant, Village of Deshler, Nebraska, has and is asserting only the right to condemn outstanding contracts with any gas users in such village, other than such village itself;

(b) Defendant, Village of Deshler, Nebraska, has a legal right to purchase wholesale gas from plaintiff; and,

(c) Defendants intended to, and the condemnation proceedings provide, that defendant, Village of Deshler, Nebraska shall, pay plaintiff for all property belonging to plaintiff, and constituting the complete gas system serving such village,

for the reasons that such allegations are inconsistent with, and contrary to, the provisions of the "notice of condemnation," and the actions, statements, assertions, claims and intentions of defendants Chairman and Board of Trustees as communicated to plaintiff's officers and employees at all times prior to the commencement of this action, and are a change in position by the defendants after the institution of this litigation.

Then, plaintiff, by its reply, successively (a) denies the allegation of defendants' answer (paragraph 14 thereof, supra) that defendant, Village of Deshler, Nebraska, will proceed in accordance with Section 19-701, and alleges that prior proceedings in defendant village's condemnation action have not been in accordance with such statute, and (b) admits the allegations of paragraph 16 of defendants' answer, supra.

And, by such reply, plaintiff denies the allegations of paragraph 17 of defendants' answer, supra, and in connection therewith alleges that, by letter dated November 16, 1954, an up-to-date map of its gas distribution system in the Village of Deshler, Nebraska, was mailed to the Clerk of defendant, Village of Deshler, Nebraska; that in August, 1956, a second map, corrected to include any changes in such system, was delivered to the Clerk of the Village of Deshler, Nebraska, at his request; that such maps complied in all respects with the requirements of plaintiff's franchise in Village of Deshler, Nebraska; that the defendant's Chairman and Board of Trustees did not rely on such maps for the purpose of preparing the notice of condemnation, but rather relied upon information furnished to such defendants by an independent engineering firm hired by such defendants to appraise plaintiff's distribution system for purposes of condemnation proceedings; and that the errors regarding the description of plaintiff's distribution system in the notice of condemnation are attributable to the erroneous, incomplete and inaccurate information furnished such defendants by that engineering firm.

Finally, in its reply, plaintiff denies each and every allegation contained in defendants' answer, except as theretofore in such reply admitted or qualified.

In its complaint, plaintiff prays:

"that the defendants and each of them and their successors in office be enjoined from prosecuting further proceedings for the condemnation of plaintiff's gas distribution system located in the Village of Deshler, Nebraska, or any property used in connection therewith; and from any further action or actions as or before the Court of Condemnation appointed by the Supreme Court of Nebraska on April 27, 1957 as stated in this complaint, and from any further actions or proceedings leading to the acquisition by the Village of Deshler, Nebraska of plaintiff's property located in said Village or any part thereof through the exercise of authority purportedly arising out of the election held in said Village on the 2nd day of April, 1957, and for such other and further relief as may be just and equitable."

The prayer of the defendants' answer is:

"that plaintiff's complaint be dismissed with prejudice at plaintiff's costs; that these defendants recover their costs herein expended; that the proceedings in question be adjudged in all things to be valid and proper; and for such other, further and different relief as may seem just and equitable to the court in the premises."

Upon the closing of the pleadings, a comprehensive pretrial conference was held, of which a complete written report (filing 12) is a part of the record. It had to do largely with the admission of facts or of documents for the simplification of proof, and did not result in any narrowing or restatement of the issues as they had been made by the pleadings, supra.

Trial of the action has been had. In it plaintiff produced three witnesses, by deposition, Samuel D. Whiteman, its president, and, by personal appearance, James J. Diesing, its director of public relations, and Leo E. Nelson, its corporate director and vice-president in charge of distribution and sales, all of whom at all material times were residents of Hastings, Nebraska. In the trial, defendants offered the oral evidence of one witness, James D. Kissell, of Lincoln, Nebraska, an engineer by education and occupation, an employee of Fulton & Cramer, consulting engineers, of Lincoln, Nebraska, which firm had been and still is employed by the defendant, Village of Deshler, as consulting engineers, in connection with its proposed acquisition of plaintiff's gas distribution system. And in the trial, many written exhibits were introduced, largely by stipulation, but some upon foundational testimony.

In the way both of trial memoranda, and of factual and legal arguments after trial, counsel have substantially assisted the court by the submission of exhaustive and competent typewritten briefs. And the proceeding is ready for final ruling.

The court proceeds, first, to the announcement of its findings of fact. In harmony with a declaration upon the point advanced earlier herein, the facts which, by the pleadings are agreed upon, are considered to be found as true, without needless and indefensible repetition. This extends both to those facts that are unqualifiedly admitted, and to those others which are conceded factually to be true, though with reservation touching their implications. And it extends also to the verbal contents of the exhibits admitted in the pleadings, including the copies of (a) the plaintiff's franchise ordinance, (b) its formal acceptance of that ordinance, (c) the proceedings of the Village Board of defendant, Village of Deshler, Nebraska, at its meeting of March 5, 1957, including the resolution of the Board directing the submission of the question of condemnation at the election of April 2, 1957, (d) the notice of election as published, (e) the official ballot, (f) the petition filed before the Court of Condemnation, (g) plaintiff's F.P.C. gas tariff, First Revised Volume No. 1, and (h) the contract, dated February 20, 1953, for the sale of gas as fuel in the Municipal Power Plant of Village of Deshler, Nebraska. Counsel will understand that the court has in view the contents of those several exhibits, although they will not here be set out at length. Moreover, it will be understood that this announcement of findings of fact, based on the pleadings, includes the pleaded history of the proceedings leading up to the holding of the election of April 2, 1957, the results of that election, and the steps taken to constitute the Court of Condemnation, and the proceedings thus far had before that body.

From the evidence received upon the trial, further facts are now found, which, as will at once appear, are largely related or collateral to some of the admitted facts whose recollection has just been advanced. These are here announced in their ultimate significance, though without evidentiary atomization.

Plaintiff acquired the natural gas distribution system in the Village of Deshler as of April 16, 1941 by purchase from its then owner, Nebraska Natural Gas Company. At all times material herein, it has been, and it is, operating such system and serving the Village of Deshler and its inhabitants with natural gas under a franchise to it granted by the Village of Deshler, Nebraska, dated March 2, 1954, replacing an earlier franchise under which plaintiff had theretofore operated; and it also has been, at all times material herein, and is, providing natural gas as fuel for use in the Municipal Power Plant of the Village of Deshler, in pursuance of a special contract therefor between the plaintiff and Village of Deshler, Nebraska, dated February 20, 1953, effective on and after April 1, 1953.

By section 7 of its franchise, plaintiff was required at all times to "keep a map in the office of grantee" (i. e. plaintiff) "or of the Clerk of said municipality, showing the size and location of its mains laid in said distribution system in said municipality." On November 16, 1954, with a letter of transmittal, plaintiff delivered to and lodged with the Village Clerk of the Village of Deshler, Nebraska, its then most recent map, and it did this in ostensible compliance with the quoted language of such section. Even theretofore, a map or maps of its system had been delivered to the Clerk of the village, but whether it or they had been kept in a current position the court may not find with assurance from the evidence.

Under plaintiff's Federal Power Commission Gas Tariff, its Rate Schedule G–1 is made subject to the following provision touching "Applicability and Character of Service":

> "*This rate schedule* shall apply separately to all natural gas delivered by Seller to Buyer on a firm basis for resale in a single community and its environs, and shall also

apply to such additional natural gas as Buyer may require for the operation of its gas system in such community and its environs, but *shall not apply to gas used or consumed by Buyer (or any of its Departments) for power generation or industrial purposes.*" (Emphasis added.)

During, or some time prior to August, 1956, the Chairman and members of the Board of Trustees of Village of Deshler, Nebraska, commenced the informal consideration and discussion of a project for the acquisition, by the Village of Deshler, Nebraska, through the exercise of the right of eminent domain, of the plaintiff's gas distribution system in the village. Whether the project was initially conceived by members of the Village Board, or was drawn to their attention through spontaneous action by other citizens of Deshler may not be found with any reasonable assurance, upon the instant record, and is not regarded as material in this case. In any event, the Chairman and members of the Board of Trustees of the village early became active and militant advocates of the project. Despite their protestation of objectivity towards the subject, they were not at all impartial in respect of it, but obviously supported it affirmatively and vigorously.

Early in the consideration of the project, a news article concerning it appeared in the Deshler Rustler, a local newspaper. This article came to the attention of James J. Diesing. He promptly drew it to the notice of Mr. Whiteman. At Mr. Whiteman's suggestion, Mr. Diesing proceeded to Deshler, and interviewed some of the members of the Village Board on the subject. He thus learned that the project was being actively considered, and he also advanced the view that it ought not to be carried into effect. As early as September 6, 1956, the subject was publicly discussed at a Village Board meeting, at which the plaintiff was represented by Mr. Diesing and Mr. Nelson, and either or both of Mr. Elmer J. Jackson, counsel for plaintiff, and a Mr. Waller, plaintiff's superintendent of distribution. At such meeting, plaintiff, through Mr. Nelson, spoke in opposition to the movement.

Meanwhile, at dates not clearly disclosed in the record, the Village Board took at least three steps in the direction of the acquisition of the plaintiff's plant. It employed Fulton & Cramer as consulting engineers to make an examination of the plant and the project for its acquisition and use, and to report thereon to the Board. It referred the subject to the consideration of Mr. W. O. Baldwin, of Hebron, Nebraska, as attorney for the Village. And it erected a so-called "Gas Committee," consisting of Glen Kreymborg, Otto Lueders, and Ervin Vieselmeyer, of Deshler. This committee was ostensibly constituted as an impartial body. But its consistent position was one of militant support of the condemnation. It was, throughout, actually an instrumentality for the promotion of the project.

On October 26, 1956, Mr. Baldwin addressed and transmitted to the plaintiff a letter, of which a copy is set out in a footnote.[5] To that letter, on November

5. Following is Mr. Baldwin's letter of October 26, 1956:
"Kansas-Nebraska Natural Gas Company
"Hastings, Nebraska
"Re: Village of Deshler
"Gentlemen:
"As attorney for the Village of Deshler and in connection with the gas system now owned by you in the Village of Deshler, I hereby request the following information:
"1. The footage of gas mains of various types and sizes in Deshler and the year of installation of each type or size. (We have a map of the gas system furnished to the Village by you. However, this map is not very clear and gives no actual dates of installation.)
"2. The total number of gas meters, size and type of various meters and the dates of installation of the various types. (We have a very close inventory of the types and sizes of meters but we have no way of knowing the dates of installation.)

28, 1956, plaintiff, through Mr. White-man, made reply, of which a copy is also set out in a footnote.[6]

"3. Do you own any real property in the Village of Deshler, Nebraska, and, if so, where is it located?

"4. Do you own any real property out-side of the Village, which property is used *only* in serving the Desh-ler system?

"5. The total number, size and type of pressure regulators in the Vil-lage. (Same comments as for #2 above.)

"6. A description of the type of gas odorizer used in the Village.

"7. The number, size and type of cath-odic installations and date of in-stallation. (Same comments as for #2 above.)

"8. The number of feet of gas serv-ice pipe and the date of installa-tion of each type.

"9. The gas load in Deshler for the past four (4) years, by years, in each of the following classifica-tions: (a) domestic; (b) com-mercial; and (c) interruptable.

"10. Peak day use and the date of the peak day use during the past four (4) years.

"11. The total gas revenue for the past four (4) years, by years, in each of the following classifica-tions: (a) domestic; (b) com-mercial; and (c) interruptable.

"12. The number of customers now in-stalled by the following classifica-tions: (a) domestic; (b) commer-cial; and (c) interruptable.

"13. The wholesale rate which would be applicable to Deshler.

"I am informed by Mr. E. C. Horn-bostel, Chairman of the Village Board, that representatives of your company have stated to representatives of the Vil-lage that the Village could not purchase gas from Kansas-Nebraska for resale to the Municipal Light Plant. I will appre-ciate it if you will inform me as to the authority on which you base this claim.

"Thanking you, I am

"Very truly yours
"/s/ W. O. Baldwin
"WOB:LLK W. O. Baldwin
"(certified mail) Village Attorney"

6. Plaintiff's letter to Mr. Baldwin, under date of November 28, 1956, follows:
"Mr. W. O. Baldwin, Attorney
"141 North 4th Street
"Hebron, Nebraska
 "Re: Village of Deshler, Nebraska
"Dear Mr. Baldwin:

After its employment as consulting engineers, the firm of Fulton, & Cramer, through its employee, James D. Kissell,

"Reference is made to your letter of October 26, 1956 requesting information concerning the gas distribution system owned and operated by this company in the Village of Deshler, Nebraska. We understand that this information is de-sired by the engineering firm authorized by the Village Board to study the fea-sibility of condemning our property.

"It has long been our understanding that condemnation is a power retained in the people to be exercised only if the utility fails and refuses to give good and proper service or if its rates are unrea-sonably high. We have conscientiously endeavored to determine if our service is or has been unsatisfactory and can find no evidence that the people of Deshler consider it to be anything but the best. Our rates have been conclusively found to be fair and reasonable.

"We can only conclude that any de-sire to condemn our system is motivated, not by the thought of improving the serv-ice we render to the people of Deshler, but rather by the desire to have the profit earned by us on our investment. On this basis, the Village might just as well take over a bank, a store, or any other business so long as it makes a profit.

"It would require considerable time and expense to prepare answers for the ques-tions which the engineering firm has pre-pared. Regardless of the nature of that information, we know that the engineering firm can offer a report favorable to con-demnation based on eliminating costs for service to customers and escaping fed-eral and state taxes which we must pay.

"For this reason, and because we have no desire to sell our property in Deshler, we respectfully decline to expend the time and money to prepare all of the de-tailed information specified by the engi-neering firm. We do this without any feeling of spite or ill will, but rather be-cause we know that regardless of what we might furnish, the engineering firm can make a report favorable to con-demnation by eliminating the tax bur-dens all private citizens and businesses must bear and by failing to provide for the standards of service our experience shows to be necessary and vital to the safety, comfort and welfare of the peo-ple of Deshler and all the other towns we serve in Nebraska, Kansas and Colo-rado.

"We have previously delivered to you a copy of our FPC wholesale tariff and

made a study of plaintiff's gas distribution system utilizing, among other sources of information, a map which Mr. Kissell declared was "supplied to the village by the Kansas-Nebraska Gas Company in the Spring of 1956." And, under date of January 19, 1957, Fulton & Cramer, through Mr. Kissell, delivered to the Chairman and Board of Trustees of the village a "Preliminary Engineering Report," in which it offered an analysis of the property of plaintiff, an evaluation of it, and an estimate of its probable cost, and operating possibilities, and declared, by way of conclusions: first.

"There is no question of the feasibility of a municipal gas system in Deshler; obviously, private companies would not seek to engage in it if the operation were not profitable. Many, many cities have successfully and profitably operated municipal gas systems. Deshler, with its fine utility departments, can certainly do as well."

and, finally:

"It is our opinion that the operation of the gas system in Deshler, as a municipal enterprise, is entirely feasible and will be a definite asset to the village."

In the interval between the plaintiff's initial awareness of the possible taking of its gas distribution plant, and the adoption of the resolution of the Village Board on March 5, 1957, the plaintiff, through its officers, and principally through Messrs. Whiteman, Diesing, Nelson, Jackson and Waller, or at different times and places, one or more of them, consistently and frequently held conferences with the Chairman, or one or more members of the Village Board, with Mr. Baldwin, with members of the "Gas Committee," and with a representative of Fulton & Cramer, in which the plaintiff undertook to set out and support its position against the taking. On several occasions, appearances were made by one or more of such officers and employees of plaintiff, in its behalf, at public meetings of the Village Board. On all such occasions, the position of plaintiff in opposition to the proposed taking was, by its representative or representatives, declared and supported. And, generally, such opposition was expressly premised upon the grounds on which plaintiff now assails the proposed condemnation. It is not by the court considered necessary, or even appropriate at this point, to recall and relate, one after another, those several encounters, or precisely what was said in each of them. They followed among themselves a reasonably consistent pattern, and they were not unlike similar "campaigning" in reference to controverted urban problems.

The court does note and find that in several of such conferences, the plaintiff, through its representatives, urged upon the representatives of the village, acting from time to time, the position that, under the National Gas Act and its Federal Power Commission tariff provisions, the village had and would have no right to utilize natural gas by it purchased for resale, that is to say, wholesale gas, as fuel for its electric generating plant. To that position, the several representatives of the village never agreed. On the contrary, they either denied it, or questioned its validity without advancing authority in opposition to it. Nor, so far as the court is able to perceive, have the Chairman and members of the Board of Trustees of the village ever formally receded from that attitude of denial or doubt, as the case may be.

But, eventually, plaintiff's effort in the way of persuasion was unsuccessful. At its meeting on March 5, 1957, the Village

copies of decisions of the United States Court of Appeals for the Eighth Circuit and of the United States Court of Appeals for the District of Columbia concerning the non-availability of power plant gas under said tariff. We will be happy to discuss these matters further with you or members of the Village Board if it is desired.

"Very truly yours,
"/s/ S.D.W.
"S. D. Whiteman
"President"

Board adopted the resolution for the election. Notice of the election was given, and the election was held, with the result already disclosed.

During the interval between March 5, 1957 and the election, plaintiff persisted in its efforts to intercept the taking of its property. But in that period its labors were with the voters of the village, and constituted an attempt to obtain at the election a vote adverse to condemnation. These efforts included, along with possible other services, the preparation and publication at plaintiff's expense, of advertising material in the local newspaper; the preparation and printing and circulation in and about Deshler of leaflets favorable to plaintiff's position; the holding of interviews and conferences with many people, including eligible voters of Deshler, and the use of the telephone, especially on the day of the election, in an effort to obtain the participation in the election of a high percentage of the qualified voters.

In the same period, those actively supporting the proposed condemnation, notably the "Gas Committee," with the support and cooperation of the consulting engineers, engaged in like efforts but in behalf of an affirmative vote upon the measure. These efforts included, among other things, a public meeting at a church parish hall on Monday, March 25, 1957, for which the circulated publicity declared that what it denominated as "The fact finding board for the citizens of Deshler" asked "you" to attend, and promised (a) "Free Donuts and Coffee" and (b) the "engineers who made the survey" as "people who will answer your questions."

Jurisdiction is unchallenged and unquestionably exists. Title 28 U.S.C. § 1332(a) (2).

■ It is recognized, too, that, by virtue of Title 28 U.S.C. § 1652, Erie Railroad Company v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, the substantive law which is presently to be administered—apart from the impact of the Constitution and Statutes of the United States—is that of Nebraska. It is, therefore, Nebraska's local law, as well as the provisions of the Natural Gas Act, and regulations under it, with which the court is principally concerned.

The statute within which the defendant, The Village of Deshler, Nebraska, and the Chairman and Members of its Board of Trustees, have proceeded is Chapter 19, Article 7, R.S.Neb.1943, as amended. Counsel and the court are familiar with the provisions of the several sections of that article. And, in view of the specification, in the complaint and the briefs, of the precise grounds upon which the plaintiff seeks relief, it is not considered necessary, or even consistent with reasonable brevity, to quote extensively from the statute.

In this case no question is tendered touching the constitutionality of Chapter 19, Article 7, R.S.Neb.1943, as amended, and particularly of section 19–701, R.S. Neb. It may be observed, however, that the Supreme Court of Nebraska has held the statute to be constitutional. May v. City of Kearney, 145 Neb. 475, 17 N.W. 2d 448; City of Mitchell v. Western Public Service Company, 124 Neb. 248, 246 N.W. 484.

No contention is advanced that there has been a failure in any manner to follow the procedural requirements of the statute in the way of the adoption of the resolution for submission, or in the language of the notice of the presentation of the issue at the election, or the form of the ballot. Of course, an issue is made (et supra et infra) over the description of the property to be taken as reflected in the election proceedings.

■ It appears not to be questioned that injunction is an allowable remedy whereby an owner, whose property is in the way of being taken by the right of eminent domain, may prevent such taking if it be void and unlawful. The court considers that the availability of the remedy—the facts warranting its employment—must be granted. Consumers Public Power District v. Eldred, 146 Neb. 926, 22 N.W.2d 188; May v. City of

Kearney, 145 Neb. 475, 17 N.W.2d 448; Drummond v. City of Columbus, 136 Neb. 87, 285 N.W. 109, 286 N.W. 779; Heppe v. State of Nebraska, 162 Neb. 403, 76 N.W.2d 255.

■ Nor does Title 28 U.S.C. § 2283, operate in the present context to deny this court's right, if the facts otherwise require, to award injunctive relief. That section declares that:

"A court of the United States may not grant an injunction to stay proceedings in a State Court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

No Act of Congress expressly authorizes injunctive relief in this case. And no such relief is presently necessary either in aid of this court's jurisdiction, or to protect or effectuate any judgment of this court. But what matters, in obviation of the applicability of the statute by the language just quoted, is that the "Court of Condemnation" provided for under Chapter 19, Article 7, R.S.Neb. 1943, as amended, is not a "State Court" within the meaning of Title 28 U.S.C. § 2283. Moreover, the proceeding pending before that body, at which the plaintiff's complaint is aimed, is not, at least in its present plight, a civil action. The pertinent decisions of the Supreme Court of Nebraska make that position clear. Consumers Public Power District v. City of Sidney, 144 Neb. 6, 12 N.W.2d 104; May v. City of Kearney, 145 Neb. 475, 17 N.W.2d 448; In re Appraisement of Omaha Gas Plant, 102 Neb. 782, 169 N.W. 725; City of Mitchell v. Western Public Service Company, 124 Neb. 248, 246 N.W. 484. It is also recognized by this court and by The Court of Appeals, Eighth Circuit. Village of Walthill v. Iowa Electric Light & Power Company, 8 Cir., 228 F.2d 647; Central Power Company v. Nebraska City, 8 Cir., 112 F.2d 471.

The prayer of the plaintiff, supra, is for the interception by injunctive order of any and all further proceedings for the condemnation of its gas distribution system. That is its ultimate objective. But, essentially and preliminarily, this proceeding is and must be an attack upon the validity of the election of April 2, 1957. For, if that election be not invalid, then the ground on which plaintiff relies for the relief demanded in its prayer is cut away, and the prayer of its complaint must be denied. The plaintiff clearly so understands. And its complaint is composed of averments designed to support its thesis that the election was, and is, fatally defective and void.

Finally, and with laudable condensation, plaintiff in paragraph XII of its complaint, which the court has already quoted in full, assembles and declares the several grounds of invalidity of the election on which, at the time of the preparation of its complaint, it relied. It is in order that these grounds be now examined and considered. That will be done in the order of their statement in paragraph XII, supra.

It is first charged that the "notice of condemnation" undertakes to condemn property of plaintiff not subject to the power of eminent domain, and the paragraph specifies as the property thus immune:

"(a) All contracts for the purchase of (or?) the sale of gas; and

"(b) The right to purchase wholesale gas from Plaintiff."

The former of these specifications appears to be aimed at the obviously inexact language contained in paragraph numbered IV of the resolution, notice and ballot in the words:

"all contracts for the purchase *of* the sale of gas." (Emphasis added.)

The latter seems to arise out of this concluding phrase of paragraph numbered V of the same several instruments:

"the right to purchase wholesale gas from the Kansas-Nebraska Natural Gas Company."

It may reasonably be concluded that in paragraph numbered IV, the italicized "of" is a typographical error, and the intended and correct word is "or," so

that the phrase should read, as plaintiff appears to understand and suggest, "all contracts for the purchase or the sale of gas."

From the briefs, the court gathers that plaintiff was apprehensive at the outset that the expression "all contracts for the purchase * * * of gas" might be designed or construed to mean, or to include, the plaintiff's contracts with other gas producers as its suppliers of gas not produced by the plaintiff itself, or some interest or share in such contracts.[7] Manifestly, the Village of Deshler, Nebraska, would be without any right to condemn such a contract, or any direct interest in it. But it appears now to be clear that no such significance was intended by the phrase, and that it was conceived as a protective measure with a view to the acquisition of, and to payment for, any interest of plaintiff, which it might possess under any contract or contracts it may have within Deshler, or with any of its Deshler customers, for the purchase or sale of gas. If such an interest exists—and plaintiff seems to consider that none does except as an incident to its normal local customer relations—it ought to be acquired and, if it have any value, paid for. And in the event that in the valuation proceedings the contention is advanced that the language extends somehow to a direct interest in plaintiff's gas purchase contracts with suppliers, the Court of Condemnation may reject that position, and so declare.

Upon the liability to condemnation in the present setting of a right in favor of the Village of Deshler, Nebraska to purchase wholesale gas from plaintiff, the parties do not submit persuasive authority. This has relation to gas to be purchased by the village for resale to its local customers. And their arguments upon the point are neither instructive nor convincing. The court is disposed to the opinion that the right to such condemnation is probably unnecessary and, being unnecessary, nonexistent. What is involved is the relationship which exists after condemnation between an owner of a natural gas pipe line for the transportation of gas after a municipality has acquired by condemnation the local distribution system within the municipality's boundaries theretofore owned and operated under franchise by the owner of the pipe line.

Now, by a legislative act, approved May 27, 1957 and effective September 20, 1957, Chapter 19, Article 7, R.S.Neb.1943, as amended, was further amended by the addition of what is now Section 19–708, R.S.1943, 1959 Cumulative Supplement. Its language, so far as it is or may be material here, follows:

> "Whenever the local distribution system of any public utility, has been acquired by any city or village under the provisions of Chapter 19, Article 7, the condemnee, if it is also the owner of any transmission system, whether by wire, pipe-line, or otherwise, from any other point to such city or village shall, at the option of such city or village, be required to render wholesale service to such city or village whether otherwise acting as wholesaler or not."

That enactment appears to have present pertinence, and to set at rest the question of the right of the village to be a purchaser of "wholesale gas" from the plaintiff in the event of the effective completion of the contemplated condemnation. Naturally, it does not define the price structure or service conditions for such purchases. But it appears to confer on a condemner, as an incident to condemnation, the *right to purchase wholesale gas*. And it is that which the village now seeks.

■■ If it be thought, or if it actually be contended, that the statutory amendment, enacted after the date of the

---

7. It is shown that plaintiff produces about sixty percent and purchases about forty percent of the gas transported and marketed by it; and that its contracts for the purchase of gas from other suppliers are uniformly of long duration, usually continuing through twenty years.

election presently scrutinized, but prior to the filing before the Court of Condemnation of the Village's petition in condemnation, whose statutorily effective date was about three months subsequent to the institution of this action, and slightly longer than that after the filing of the petition in condemnation against which the complaint in this case is directed will not be effective as between the present parties in the event of the completion of the pending condemnation, this court is satisfied that the Supreme Court of Nebraska would reject that position or contention, and hold the amendment to be applicable. The amendment of 1957 is obviously remedial, and is to be construed and applied liberally. But what is more significant, there has not yet been any condemnation of plaintiff's property, or any part of it. If condemnation ever occurs, it will happen at some time hereafter. And its consequence will be measured by the law as it then stands. The election condemned nothing, but was merely a step, though an important one, in the process by which the Board of Trustees of the village obtained authority even to institute a condemnation proceeding. An actual finding of value by the Court of Condemnation does not effect condemnation, for the reason—among others—that on its filing, the village, by Section 19–704, R.S.Neb.1943, is accorded the right, and a prescribed time within which, "to elect to abandon such condemnation proceedings." And other statutory provisions even further defer the effective date of the condemnation.

 The court is satisfied that if the Village of Deshler, Nebraska shall hereafter effect the condemnation on which it is resolved, that condemnation will confer on it the right to be a purchaser from the plaintiff of "wholesale gas." Whether its inclusion of a specification of that right in its proceedings is either necessary or practically effective, it cannot in the present statutory context be operative to invalidate the election, or to defeat the pending condemnation.

Secondly, invalidity in the election is charged to exist for the asserted reason that the defendants, Village of Deshler, Nebraska, and E. C. Hornbostel, Chairman of the Board of Trustees of the Village of Deshler, Nebraska, and William Posvar, Erwin Uphoff, Ed. F. Smith and John Malpert, members of the Board of Trustees of the Village of Deshler, Nebraska, by such condemnation, intend and propose to avoid, evade, circumvent, nullify, cancel and destroy the restriction contained in plaintiff's Federal Power Commission Gas Tariff, First Revised Volume No. 1 of Rate Schedule G–1, prohibiting the gas purchased from plaintiff by defendant village thereunder for resale, from being used in the electric generating plant of defendant village, contrary to the terms of such tariff, and to the provisions of the Natural Gas Act. This point is directed at the supposed purpose and intent of the village to buy from plaintiff—even under the compulsion of condemnation, supra—natural gas for resale to customers, that is to say, wholesale gas, and to divert so much of it as the village may need or desire to its electric generating plant as fuel.

Defendants deny that they intend or propose to circumvent or violate the F. P. C. Tariff.[8] Ordinarily, the court would regard that denial as adequate. But in the sequence of events leading to this litigation, there is substantial warrant for the plaintiff's suspicion that the denial may be insincere or equivocal, that the intent or purpose to divert wholesale gas to service as fuel for the electric gen-

---

8. There is potential significance in the fact that they do not appear expressly to disclaim an intent or purpose to acquire from the plaintiff gas for resale, or "wholesale gas," and to utilize a part of it for fuel in the municipal electric generating plant. It is possible, therefore, that they intend, or have the purpose, thus to utilize gas purchased for resale, or "wholesale gas," but reserve the contention that such utilization would not be in violation of the plaintiff's F.P.C. Tariff. If that be their actual position, then, their denial of intent or purpose to circumvent or violate the Tariff does not squarely repel the plaintiff's contention, and is equivocal and evasive.

erating plant actually exists, or, to put it more exactly, persists. That the supposed right to make such a diversion and use was claimed early in the steps leading to the election upon the condemnation proceedings, by the Village Board, and in its behalf by Fulton & Cramer, its consulting engineers, and by the so-called Gas Committee, and tentatively even by the attorney for the village, is unquestionably true. They professed to perceive some unspoken and undefined distinction whereby the Village of Deshler might escape the effect of judicial decisions outlawing such diversion, infra. And it is not clear or certain that the Chairman and members of the Village Board have formally abandoned that position. The court, therefore, approaches the plaintiff's apprehension on that score with understanding and sympathy.

However, upon two separate bases, the court considers that the point thus tendered by plaintiff is not presently valid or effective to invalidate the election or intercept the condemnation.

Repeated examination of the resolution of March 5, 1957, the notice of election, and the form of ballot leads the court to the view that nowhere, in any of those instruments, is the right to the use as fuel in the village's electric generating plant of natural gas by the village purchased for resale, or wholesale gas, defined, either expressly or by fair implication, as within the thrust of the condemnation. Certainly no such inclusion could be attributed to the phrase "all contracts for the purchase of (sic) sale of gas." That is true even though included within such contracts, if any, for the sale of gas be the contract now subsisting between plaintiff and the Village of Deshler, Nebraska, for the provision of gas as fuel for the municipal electric generating plant. That contract concerns something quite different from wholesale gas, infra. And the village appears expressly to refrain from any attempt to condemn it. Nor does the right to purchase "wholesale gas" from plaintiff include the right to use any part of such wholesale gas for power plant fuel, infra.

As the second consideration, the point suggested in the last preceding sentence has been the subject of several familiar judicial rulings. They may be cited without extended discussion. They include Michigan Consolidated Gas Company v. Panhandle Eastern Pipe Line Company, 6 Cir., 173 F.2d 784; Panhandle Eastern Pipe Line Company v. Michigan Public Service Commission, 341 U.S. 329, 71 S. Ct. 777, 95 L.Ed. 993; Panhandle Eastern Pipe Line Company v. Public Service Commission of Indiana, 332 U.S. 507, 68 S.Ct. 190, 92 L.Ed. 128; Colorado Interstate Gas Company v. Federal Power Commission, 3 Cir., 185 F.2d 357; Panhandle Eastern Pipe Line Company v. Federal Power Commission, 3 Cir., 232 F.2d 467; and finally and especially, City of Hastings, Nebraska v. Federal Power Commission, 95 U.S.App.D.C. 158, 221 F.2d 31, certiorari denied 349 U.S. 920, 75 S.Ct. 660, 99 L.Ed. 1252, and City of Hastings, Nebraska v. Kansas-Nebraska Natural Gas Company, 8 Cir., 226 F.2d 419. In the ruling last cited, a decision by this court in two related cases consolidated for trial was affirmed. That decision, although made without a formal written opinion, was maturely considered and, carefully and with detail, dictated into the record. The city involved in those two cases (being also the city involved in the next preceding citation) had arbitrarily utilized gas sold to it for resale in the provision of fuel for its large electric power plant, despite a tariff provision, such as the one before the court in this action. Its action was held to be violative of its contract, the tariff and the federal statute, all to the city's very substantial disadvantage. The several cases cited in this paragraph differ in their respective settings. But from them emerge these conclusions. The plaintiff, as a corporation, engaged in the transportation of natural gas in interstate commerce, and in its sale is generally subject to regulation by Federal Power Commission under the Natural Gas Act. Sales by it of natural gas to purchasers for their consumptive use are not themselves within the reach of the Natural

Gas Act, or subject to direct regulation by Federal Power Commission. But all sales by plaintiff for resale are within the reach of the Natural Gas Act, and subject to regulation by Federal Power Commission, and to the provisions and limitations of its tariffs. And this subjection extends to tariff provisions eliminating from the rate schedule for gas sold for resale, gas used by the purchaser for its own consumptive purposes.[9] The effect of the last mentioned conclusion is that a municipality which, under such a tariff, has purchased "wholesale gas" may not lawfully use it as fuel for its electric generating plant.

■ In summary upon the point, the court is persuaded, first that the Village of Deshler, Nebraska, does not by any apt language in the steps leading to its pending condemnation, seek or attempt to acquire by eminent domain the right to use as fuel for its electric generating plant natural gas by it to be purchased from plaintiff for resale; secondly, that regardless of any antecedent desire or impression on its part, it does not intend or propose to avoid, evade, circumvent, nullify, cancel or destroy the restriction of plaintiff's F. P. C. gas tariff against such course and, finally, that, by the settled law it has, and may acquire through condemnation no right to pursue such a course. It may be observed that the sanctions against any attempt at self help in the matter of the suggested use of "wholesale gas" are austere enough to render more than improbable any resort to such a device.

■ Thirdly, plaintiff insists that the "notice of condemnation" does not include, and is not intended by defendant Chairman and Board of Trustees to cover or apply to, approximately 7,598 feet of service stubs owned by plaintiff connecting its distribution mains to the service lines of plaintiff's customers in Deshler, which ownership is disputed and not recognized by said defendants. To that specification, the short answer is that it is factually unwarranted. Paragraph III of the resolution, of the notice of election, and of the ballot is in this language:

"All gas services connected with and extending from the mains above described insofar as these are the property of the gas company."

It is made clear in the evidence before the court (if, indeed, there could be any reasonable doubt concerning it) that within the foregoing language it was intended to include, among possible other similar items, all service lines extending from the mains, so far as these service lines are owned by the plaintiff. Plaintiff characterizes such service lines, to the extent of their length, from the mains to the customers' property lines as "service stubs," while the consulting engineers representing the village refer to them, and also to like piping on the customers' premises as "service lines." And, to the full extent that any such service instrumentalities are owned by plaintiff, the village proposes in the condemnation proceeding to acquire, and to pay for, them. That is all that may be expected.

It is true that the specification in the condemnation instruments does not declare the extent or aggregate lineal footage of the "service stubs" thus to be acquired. And there is a dispute of sorts between the parties as to such footage. Plaintiff asserts that the correct figure is 7,598 feet. The village, through its con-

---

9. Under plaintiff's F.P.C. Gas Tariff, First Revised Volume No. 1, it is provided under Rate Schedule G–1 covering "firm deliveries in Nebraska for resale" touching the applicability of such rate schedule, that

"2. Applicability and Character of Service.

"(a) *This rate schedule* shall apply separately to all natural gas delivered by Seller to Buyer on a firm basis for resale in a single community and its environs, and shall also apply to such additional natural gas as Buyer may require for the operation of its gas system in such community and its environs, but *shall not apply to gas used* or consumed by Buyer (or any of its Departments) *for power generation or industrial purposes.*" (Emphasis added.)

sulting engineers, doubts the validity of that figure.

The real trouble is that the village does not know, and the maps of plaintiff in the possession of the village do not clearly disclose, such footage. Moreover, and this thought is advanced without criticism, the plaintiff by its own attitude in the initial phase of this controversy (e. g. the letters between Messrs. Baldwin and Whiteman, supra) was somewhat less than helpful in the provision of information touching its plant for those charged with the collection of information for the village. So, the village signified its determination to take, and its willingness to pay for, all service facilities leading from the mains so far as they are owned by plaintiff. More than that may not be asked. If plaintiff owns 7,598 feet, or even more, of service stubs, they will be evaluated and, if the village takes the plant, paid for.

Finally, and in a fourth section of paragraph XII of its complaint, plaintiff charges that the description of the "Notice of Condemnation" is insufficient, incomplete, inadequate, inaccurate and erroneous, and fails to meet the requirements of section 19–701, R.S.Neb.1943 in these three respects:

"(a) Equipment installed in Plaintiff's Town Border Station in Defendant Village for removing foreign materials from the gas and which is not part of Plaintiff's distribution system in Defendant Village is described in said notice as gas odorizing equipment subject to condemnation by Defendant Village.

"(b) Various gas mains which are described in said notice as 'High' pressure are actually 'intermediate' pressure.

"(c) A portion of an existing intermediate pressure main neither described nor referred to therein."

Upon two grounds, the court considers that the assignment thus made may not be sustained. The first such ground is that it appears to have been abandoned in the submission of the case. The second ground is that it is not evidentially supported.

■ On the score of abandonment, this is to be recalled. In a trial brief delivered to the court for use upon the trial, plaintiff in a restatement of the issues after the fashion of paragraph XII of the complaint, essentially copied the first three items of the paragraph numbered XII, and thereafter included only this further paragraph, "(d) Inadequate and incomplete description of the property sought to be condemned." But it did not amplify or argue in that brief that assignment. After the trial, it presented its formal brief in which it restated essentially only the first three items of paragraph XII of the complaint as the issues in its behalf, but wholly omitted the language just quoted from the trial brief, and in its formal brief, on final submission, it did not argue the point or specifications urged in the fourth section of paragraph XII of the complaint. The court supposes, therefore, that the specifications of that section were abandoned.

■ But, whether abandoned or not, they were not established by proof upon the trial. It is not proved that equipment for the removal from gas of foreign materials is in the "notice of condemnation," mistakenly described as gas odorizing equipment. Nor is there evidence supportive of the asserted misdescription or inadequate description of the pressure status of mains in the system. There is evidence of some doubt in the engineering fraternity whether individual pipes should be classified according to pressure as high or intermediate. The testimony hardly goes further than that.

■ On the whole, the court concludes that, especially in the circumstances of this litigation, the resolution, notice of election, and form of ballot fairly and with reasonable certainty, identify the property of the plaintiff, which it is proposed to take by right of eminent domain, and also disclose the intent and purpose of the village, in the event of a favorable vote at the election, to take and pay for such property in its entirety.

This seems to be all that is required in such cases. Thus, it is held that in proceedings for condemnation, and in notices of elections upon such subjects, the property to be taken must be described, not with meticulous exactness but with a reasonable degree of accuracy, or, stated otherwise, with accuracy to the degree that the property to be taken may be identified by reference to the description. And the purpose to take it must be stated unequivocally. Consumers Public Power District v. Eldred, 146 Neb. 926, 22 N.W. 2d 188; Blue River Power Company v. Hronik, 112 Neb. 500, 199 N.W. 788; Scheer v. Kansas-Nebraska Natural Gas Company, 158 Neb. 668, 64 N.W.2d 333; 29 C.J.S. Eminent Domain § 259(a), p. 1229. Regard being had to the character of the property here involved, the court holds the description as valid for its purpose.

 In considering plaintiff's criticism of the description of the property proposed to be taken, the court has kept clearly in view the rule that in a proceeding under Chapter 19, Article 7, R.S. Neb.1943, as amended, the authority of the Court of Condemnation is limited to the determination of just compensation. Village of Walthill v. Iowa Electric Light and Power Company, 8 Cir., 228 F.2d 647; Consumers Public Power District v. Eldred, 146 Neb. 926, 22 N.W.2d 188. The statute, however, provides for the making up and preservation of the record of the hearing before such Court of Condemnation. Section 19–704, R.S.Neb. 1943. And it has realistically to be understood that, before any evaluation may be made of property under condemnation, such property must be identified, and if there be doubt or dispute as to what is being taken, a record upon the issue thus arising may be made to the end that the identity of that which is to be valued may be disclosed. That is, in fact, a familiar practice in proceedings in condemnation of public utilities. The court is aware, too, that the appeal by law provided in these cases from the Court of Condemnation to the District Court, and thence to the Supreme Court, is upon "the pleadings, proceedings, and evidence embraced in such transcript." Section 19–704, R.S.Neb.1943. But, by simple definition, such an appeal is made on a record which reflects any difference of opinion between the litigants respecting what is taken. The statute appears to provide adequate protective devices for the entity whose property is taken, as well as for the taker.

The court has adverted at some length, supra, to the pre-election controversies of the parties, and their campaign tactics. The findings upon those features are less detailed than might have been required if the validity of the election had been assailed for fraud or coercion. But the election is not directly questioned on any such ground.

 It may be observed, nevertheless, that in condemnation proceedings, the necessity for taking is not ordinarily an issue. The determination of the necessity for taking a particular item of property, if its taking be legally permissible, rests with the taking authority. Consumers Public Power District v. Eldred, 146 Neb. 926, 22 N.W.2d 188; Burnett v. Central Nebraska Public Power and Irrigation District, 147 Neb. 458, 23 N.W.2d 661; May v. City of Kearney, 145 Neb. 475, 17 N.W.2d 448. Nor is the motive for taking to be scrutinized. Inslee v. City of Bridgeport, 153 Neb. 559, 45 N.W.2d 590; Central Power Company v. Nebraska City, 8 Cir., 112 F.2d 471. And, in the absence of a charge of coercion, fraud or deceit, "campaign techniques" are generally irrelevant in determining the validity of an election. Inslee v. City of Bridgeport, 153 Neb. 559, 45 N.W.2d 590; Nickel v. School Board of Axtell District R–1, 157 Neb. 813, 61 N.W.2d 566.

 The several parties to the litigation, while recognizing the general rules touching elections of the instant character already mentioned, have invited the court to confront their respective adversaries upon some of the issues with the principle of estoppel upon the basis, in each instance, of pre-election positions or

statements. The various elements or statements urged to support an estoppel have been respectfully considered by the court. But the court has been unable to perceive a situation in which either the plaintiff or the village, each through those acting in its behalf, made declarations or representations upon which its adversary relied to its disadvantage, or to the advantage of the party in behalf of which the declaration or representation was made. Roll v. Martin, 164 Neb. 133, 82 N.W.2d 34. It is not, therefore, considered that the occasion is present for the operation against either party of the principle of estoppel. And it need not be remarked that there is not now before the court a situation even remotely comparable to that which is reflected in May v. City of Kearney, 145 Neb. 475, 17 N.W.2d 448.

Upon the facts as they exist and are found, and under the applicable law, the court is entering judgment and decree denying the relief prayed for in the complaint, dismissing plaintiff's complaint and this action, and taxing the costs herein against the plaintiff.